**D DESIGN HOLDINGS, L.P.,**
Appellant/Cross–Appellee,

v.

**MMP CORPORATION d/b/a Design Directions, Inc. and Brooks Puckett,**
Appellees/Cross–Appellants.

No. 05–10–00032–CV.

Court of Appeals of Texas,
Dallas.

March 22, 2011.

Mitchell Madden, Thomas V. Murto, III, The Law Offices of Mitchell Madden, Melissa A. Johnson, Madden Sewell, LLP, Dallas, TX, for Appellant.

John L. Freeman, Barnes & Harrington, PC, Dallas, TX, for Appellees.

Before Justices O'NEILL, FITZGERALD, and LANG.

## OPINION

Opinion By Justice LANG.

Appellant/cross-appellee D Design Holdings, L.P. ("D Design") appeals a summary judgment dismissing its claims against appellees/cross-appellants MMP Corporation d/b/a Design Directions, Inc. ("MMP") and Brooks Puckett ("Puckett") (collectively, "appellees") in a suit involving alleged breach of a lease and guaranty. Appellees (1) challenge, on cross-appeal, the trial court's denial of their motion for sanctions against D Design and (2) assert in an "appellees' cross-point" that this appeal is frivolous and this Court should therefore impose "just damages" against D Design pursuant to Texas Rule of Appellate Procedure 45. *See* TEX.R.APP. P. 45. For the reasons below, we decide against D Design respecting the trial court's summary judgment and against appellees on their cross-issue and "cross-point." The trial court's orders are affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The parties do not dispute that in early April 2007, (1) MMP was a tenant of D Design under a commercial lease at the Dallas Design Center (the "lease") and (2) Puckett was president of MMP and a guarantor of a portion of MMP's lease obligation. On April 11, 2007, D Design executed a contract of sale (the "contract") to sell to Lionstone Urban Investments Two, L.P. ("Lionstone") real estate that included the premises leased to MMP. In section 1.1(e) of the contract, D Design agreed to sell and convey to Lionstone "[a]ll rights, titles and interests of Seller, as landlord under any and all lease or rental agreements relating to the Land or the Improvements (the "Leases")." Sec-

tion 11.2(d) of the contract stated that at closing, D Design would assign to Lionstone "all of [D Design's] interest in, to, and under the Leases." Additionally, section 11.7(b) of the contract provided as follows:

> (b) *Collected Rent.* All collected rent and other collected income (and any applicable state or local tax on rent) under the Leases in effect on the Closing Date shall be prorated. Seller shall be charged with any rent and other income collected by Seller before Closing but applicable to any period of time after Closing. Uncollected rent and other income shall not be prorated at Closing. Purchaser shall apply rent and other income from tenants that are collected after the Closing first to the obligations then owing to Purchaser for its period of ownership and to reasonable costs of collection, remitting the balance, if any, to Seller. Any prepaid rents for the period following the Closing Date shall be paid over by Seller to Purchaser. Purchaser will make reasonable efforts, without suit, to collect any rents applicable to the period before closing.

Pursuant to the contract, on August 15, 2007, D Design entered into an "Assignment and Assumption of Leases" (the "assignment") with LUI2 Dallas Slocum, L.P. ("LUI2"), an assignee of Lionstone. The assignment expressly included MMP's lease. The recitals in the assignment provided, in part, that D Design "desires to transfer and assign all of [its] right, title, and interest as the landlord in and to the Leases" to LUI2. Further, paragraph one of the assignment read

> Assignor does hereby ASSIGN, TRANSFER, and DELIVER unto Assignee the Leases, including, without limitation, the rent and other sums to accrue under the Lease, including the amount of security deposits paid under

the Leases, and not heretofore applied, together with interest thereon to the extent any interest is required by law or otherwise to be paid to such tenants, and all the rights and benefits of every description whatsoever belonging to or accruing to the benefit of landlord in the Leases, including the rights under guaranties of such Leases.

(emphasis original). The parties do not dispute that at the time of the sale and assignment described above, MMP owed money for unpaid rent under the lease.

On March 3, 2008, appellees entered into a settlement agreement and mutual release with LUI2 (the "settlement agreement"). The settlement agreement provided in relevant part that in return for payments to LUI2 by appellees, LUI2 "for itself, its partners, predecessors and successors and assigns, hereby releases, acquits and discharges Tenant, and Tenant's officers ... and Guarantor ... from any and all claims, liabilities and obligations of whatever nature ... arising from or under the Lease and the Guaranty."

In its first amended petition, the live pleading at the time of the orders at issue,[1] D Design asserted, in relevant part, (1) a "breach of lease" claim against MMP, alleging unpaid rent that had accrued prior to the sale and assignment described above was owed by MMP to D Design, and (2) a "breach of guaranty" claim against Puckett based on the same unpaid rent. Appellees filed general denial answers.

Simultaneously, appellees filed a motion for traditional summary judgment pursuant to Texas Rule of Civil Procedure 166a(c) and a motion for sanctions pursuant to Texas Rule of Civil Procedure 13.

*See* Tex.R. Civ. P. 166a(c), 13. In their motion for traditional summary judgment, appellees contended D Design had no claims against them because the claims asserted by D Design (1) were expressly assigned to LUI2 pursuant to the assignment and (2) had been satisfied and appellees had been released from such claims pursuant to the settlement agreement. Exhibits attached to appellees' motion included copies of (1) D Design's first amended petition, (2) the assignment, and (3) the settlement agreement. Also attached as an exhibit was an affidavit of Puckett in which he testified respecting the settlement agreement.

In their motion for rule 13 sanctions, appellees asserted that D Design and its attorney knew at the time D Design's first amended petition was filed that (1) D Design had assigned "all of its rights under the leases including rights under guaranties of the leases" and (2) the money being sued for had already been paid to LUI2. Therefore, appellees argued, such petition was (1) groundless because D Design's claims had no basis in law or fact and (2) filed in bad faith or for the purpose of harassment. Appellees requested (1) an order dismissing D Design's claims against them or, in the alternative, striking all or part of D Design's pleadings against them, and (2) an award of reasonable and necessary attorney's fees. The exhibits attached to appellees' motion for rule 13 sanctions were identical to those attached to appellees' motion for summary judgment.

In response to appellees' motions, D Design contended in part that appellees "essentially argue that they are third-party

---

1. D Design's first amended petition was originally filed in trial court cause number 08–08562–L against MMP, Puckett, Lionstone, and LUI2. In an order dated September 25, 2009, the trial court granted a motion by appellees to sever D Design's claims against them and make those claims the subject of a separate suit. The severed action was assigned the trial court cause number shown in the heading above.

beneficiaries to the agreements between D Design and Purchaser without establishing the elements necessary to prove that they are third-party beneficiaries."

Following a hearing, the trial court granted appellees' motion for summary judgment and dismissed D Design's claims against appellees. In a separate order, appellees' motion for sanctions was denied. Both sides filed timely notices of appeal.

## II. SUMMARY JUDGMENT

In its sole issue on appeal, D Design asserts the trial court erred by granting appellees' motion for summary judgment. Specifically, D Design argues (1) "[r]ents that had already accrued prior to closing were not assigned"; (2) while "the gist of [appellees'] motion for summary judgment was that they were third-party beneficiaries to a contract between D Design and the Purchaser," appellees did not plead or prove that theory; and (3) there is no evidence that D Design released appellees from their obligations under the lease and guaranty at issue. Further, D Design asserts in its reply brief on appeal that even if appellees' contrary interpretation of the contract and assignment is reasonable, "it is simply one of two reasonable interpretations and therefore there is a fact issue that must be submitted to the jury."

### A. Standard of Review

The standard of review for a "traditional" summary judgment is well known. See Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex.1985). We review the grant of summary judgment de novo. Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex.2003). A summary judgment under rule 166a(c) is properly granted when the movant establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Tex.R. Civ.

P. 166a(c); Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex.1991). In reviewing a grant of summary judgment, we take as true evidence favorable to the nonmovant, making every reasonable inference and resolving all doubts in the nonmovant's favor. Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex.1995). The movant bears the burden on appeal of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See Nixon, 690 S.W.2d at 548. If the movant discharges its burden, the burden shifts to the nonmovant to present to the trial court any issues that would preclude summary judgment. See Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n, 205 S.W.3d 46, 50 (Tex.App.-Dallas 2006, pet. denied).

### B. Applicable Law

#### 1. Third–Party Beneficiary Status

The characterization of a claim is a question of law, which we review de novo. See Hansberger v. EMC Mortg. Corp., No. 04–08–00438–CV, 2009 WL 2264996, at *5 (Tex.App.-San Antonio July 29, 2009, pet. denied) (mem. op.). In contract actions, privity of contract is an essential element of recovery. See Boy Scouts of Am. v. Responsive Terminal Sys., Inc., 790 S.W.2d 738, 747 (Tex.App.-Dallas 1990, writ denied). However, "[a] well defined exception to the general rule thus stated is that one who is not privy to the written agreement may demonstrate satisfactorily that the contract was actually made for his benefit and that the contracting parties intended that he benefit by it so that he becomes a third-party beneficiary and eligible to bring an action on such agreement." Id.

#### 2. Contract Interpretation

An assignment is a contract between the assignor and assignee and oper-

ates by way of agreement or contract. *Johnson v. Structured Asset Servs., LLC,* 148 S.W.3d 711, 721 (Tex.App.-Dallas 2004, no pet.). When construing a written contract, our primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *See, e.g., Seagull Energy E & P, Inc. v. Eland Energy, Inc.,* 207 S.W.3d 342, 345 (Tex.2006); *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex.2003). We give contract terms their plain and ordinary meaning unless the contract indicates the parties intended a different meaning. *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.,* 294 S.W.3d 164, 168 (Tex.2009). Under generally accepted principles of contract interpretation, all writings that pertain to the same transaction will be considered together, even if they were executed at different times and do not expressly refer to one another. *DeWitt Cnty. Elec. Co-op., Inc. v. Parks,* 1 S.W.3d 96, 102 (Tex.1999). We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Frost Nat'l Bank v. L & F Distribs., Ltd.,* 165 S.W.3d 310, 312 (Tex. 2005). No single provision should be given controlling effect. *Seagull Energy E & P, Inc.,* 207 S.W.3d at 345. When the provisions of a contract appear to conflict, we will attempt to harmonize the provisions and assume the parties intended every provision to have some effect. *United Protective Servs., Inc. v. West Village Ltd. P'ship,* 180 S.W.3d 430, 432 (Tex.App.-Dallas 2005, no pet.).

If contract language can be given a certain or definite meaning, then it is not ambiguous. *See, e.g., Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.,* 121 S.W.3d 742, 746 (Tex. 2003); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). If we are unable to harmonize

the provisions and give effect to all of a contract's clauses, the contract is susceptible to more than one reasonable interpretation and is thus ambiguous. *Hackberry Creek Country Club, Inc.,* 205 S.W.3d at 56; *see also Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.,* 297 S.W.3d 248, 252 (Tex.2009) (contract is not ambiguous just because parties disagree over its meaning). A court may conclude a contract is ambiguous even in the absence of such a pleading by either party. *Hackberry Creek Country Club, Inc.,* 205 S.W.3d at 57. When a contract is ambiguous, granting summary judgment based on the contract is improper. *Coker,* 650 S.W.2d at 394; *Harris v. Rowe,* 593 S.W.2d 303, 306 (Tex.1979). Whether a contract is ambiguous is a question of law, which we review de novo. *Dynegy Midstream Servs., Ltd. P'ship,* 294 S.W.3d at 168; *Shanks v. Treadway,* 110 S.W.3d 444, 447 (Tex.2003). Likewise, interpretation of an unambiguous contract is reviewed de novo. *See, e.g., MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 650–51 (Tex. 1999).

### C. Analysis

D Design asserts appellees essentially claimed third-party beneficiary status as part of the grounds for summary judgment and, accordingly, must plead and prove third-party beneficiary status. D Design does not explain, and the record does not show, how the third-party beneficiary doctrine is applicable in this case. Further, the record does not show appellees seek in any way to bring an action on any contract between D Design and Lionstone or LUI2. *See Boy Scouts of Am.,* 790 S.W.2d at 747. Accordingly, we cannot agree appellees have any burden to plead and prove third-party beneficiary status.

Next, we address D Design's argument that its claims against appellees for rents

due at the time of the sale were not assigned. D Design contends, "When read together, the Assignment, which assigned only rents 'to accrue' and not rents that had already accrued, and the Contract of Sale, which provided an obligation and a mechanism for the purchaser to collect and remit uncollected rent due at closing to D Design, vest the right to those past-due rents which had accrued at closing in the seller, D Design." (footnotes omitted). Further, D Design asserts the phrase "rent and other sums to accrue" in paragraph one of the assignment excludes rent that had accrued prior to closing and "controls over a more general statement of coverage."

Appellees respond that "D Design's position that only rents which had not accrued were assigned is not tenable and without merit given the language of the assignment and the contract of sale." According to appellees, such language "makes it clear that D Design no longer had the right to collect pre-closing unpaid sums from [appellees]."

We consider together the contract and the assignment. *See DeWitt Cnty. Elec. Co-op., Inc.,* 1 S.W.3d at 102. Further, in construing a contract, we attempt to harmonize the provisions and assume the parties intended every provision to have some effect. *See United Protective Servs., Inc.,* 180 S.W.3d at 432.

 We cannot agree with D Design on this argument. The phrase cited by D Design is part of a sentence that reads, in full, that D Design assigns, *"without limitation,* the rent and other sums to accrue under the Lease, . . . and all the rights and benefits of every description whatsoever belonging to or accruing to the benefit of landlord in the Leases, including the rights under guaranties of such Leases." (emphasis added). Rather than limiting the assignment, the language, "without limita-

tion," confirms there is no limitation and makes clear that the phrase cited by D Design merely identifies a portion of the rights included within the unlimited rights transferred. Additionally, D Design's interpretation would render ineffective both (1) the provision in that sentence assigning "all the rights and benefits *of every description whatsoever belonging to or accruing to the benefit of landlord* in the Leases, including the rights under guaranties of such Leases" (emphasis added) and (2) the recital in the assignment that D Design "desires to transfer and assign all of [its] right, title, and interest as the landlord in and to the leases" to the assignee.

Next, we address D Design's contention that, had the parties intended to "assign everything" at closing, they would not have included in the contract an obligation for the purchaser to make reasonable efforts to collect rents that were past due at closing and then remit them to the seller. Once again, we cannot agree with D Design. Section 11.7(b) of the contract provided, in relevant part, "Purchaser shall apply rent and other income from tenants that are collected after the Closing first to the obligations then owing to Purchaser for its period of ownership and to reasonable costs of collection, remitting the balance, if any, to Seller." Further, that section stated "Purchaser will make reasonable efforts, without suit, to collect any rents applicable to the period before closing." However, section 11.7(b) makes no provision for D Design to take any collection action against any tenant for past due rents. The language in that provision gives no indication that D Design is reserved any right to collect from any tenant by suit or otherwise. Further, elsewhere in the contract, D Design agreed (1) to sell and convey all of its "rights, titles and interests . . . as landlord under any and all

lease or rental agreements" and (2) to deliver at closing an assignment of all of its "interest in, to, and under the Leases."

Finally, assuming without deciding that the issue of ambiguity asserted by D Design is properly before us, we cannot agree with D Design that the contract and assignment are susceptible to more than one reasonable interpretation. As described above, the language of each of those agreements can be given a certain and definite meaning. *See Universal Health Servs., Inc.,* 121 S.W.3d at 746; *Coker,* 650 S.W.2d at 393. We conclude those agreements are not ambiguous. *See Universal Health Servs., Inc.,* 121 S.W.3d at 746; *Coker,* 650 S.W.2d at 393.

Based upon the language of the contract and assignment, we conclude D Design retained no right to collect from appellees rent that had accrued at the time of closing. Accordingly, we conclude the trial court did not err by granting appellees' summary judgment motion. We need not address D Design's remaining argument respecting appellees' alternative ground for summary judgment. We decide this issue against D Design.

### III. RULE 13 SANCTIONS

In a single cross-issue, appellees contend the trial court erred by denying their motion for sanctions pursuant to rule 13. *See* TEX.R. CIV. P. 13. Appellees assert D Design's lawsuit against them was groundless and brought in bad faith or for the purpose of harassment because D Design sought to recover from appellees on claims D Design had expressly assigned to LUI2 prior to filing suit.

D Design responds that its lawsuit is well-grounded and there is no evidence such suit was filed in bad faith or for purposes of harassment. Further, in a pre-submission letter brief filed in this Court, D Design cites *Bedding Component*

*Manufactors, Ltd. v. Royal Sleep Products, Inc.,* 108 S.W.3d 563, 564 (Tex.App.-Dallas 2003, no pet.), for the proposition that "without a hearing on the motion for sanctions, the trial court has no evidence before it to determine that a pleading is sanctionable."

### A. Standard of Review

A trial court's ruling on a motion for sanctions is reviewed under an abuse of discretion standard. *See, e.g., Cire v. Cummings,* 134 S.W.3d 835, 838 (Tex.2004); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241 (Tex.1985). The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but "whether the court acted without reference to any guiding rules and principles." *Cire,* 134 S.W.3d at 838; *Downer,* 701 S.W.2d at 241. The trial court's ruling should be reversed only if it was arbitrary or unreasonable. *Cire,* 134 S.W.3d at 838; *Downer,* 701 S.W.2d at 242.

### B. Applicable Law

Rule 13 provides for sanctions against a party or attorney who signs a pleading, motion, or other paper that is "groundless and brought in bad faith or groundless and brought for the purpose of harassment." TEX.R. CIV. P. 13; *Keith v. Solls,* 256 S.W.3d 912, 916 (Tex.App.-Dallas 2008, no pet.). "Groundless" means no basis in law or fact and not warranted by a good faith argument for the extension, modification, or reversal of existing law. TEX.R. CIV. P. 13. Bad faith is not simply bad judgment or negligence, but means the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes. *Keith,* 256 S.W.3d at 916. "Harass" is used in a variety of legal contexts to describe words, gestures, and actions that

tend to annoy, alarm, and verbally abuse another person. *Id.* at 916–17. Filing a motion or pleading that the trial court denies does not entitle the opposing party to rule 13 sanctions. *Elkins v. Stotts–Brown,* 103 S.W.3d 664, 668 (Tex.App.-Dallas 2003, no pet.). "Rule 13 requires the trial court to hold an evidentiary hearing to make the necessary factual determinations about the motives and credibility of the person signing the allegedly groundless pleading." *Keith,* 256 S.W.3d at 917; *accord In re Lewis,* No. 05–08–01541–CV, 2010 WL 177817, at *2 (Tex.App.-Dallas Jan. 20, 2010, no pet.) (mem. op.); *McCain v. NME Hosps., Inc.,* 856 S.W.2d 751, 757 (Tex.App.-Dallas 1993, no writ).

Generally, courts presume that pleadings and other papers are filed in good faith. *Low v. Henry,* 221 S.W.3d 609, 614 (Tex.2007); *GTE Commc'ns Sys. Corp. v. Tanner,* 856 S.W.2d 725, 730 (Tex.1993). The party seeking sanctions bears the burden of overcoming this presumption of good faith. *Low,* 221 S.W.3d at 614.

### C. Analysis

In a post-submission letter brief filed in this Court, appellees assert the motion for summary judgment and motion for sanctions "were set for the same time." Appellees argue

The [trial] court heard the motion for summary judgment after which the motion for sanctions was brought to the court's attention. The court stated that he would not award sanctions. The motion for sanctions had the evidence attached to it and plaintiff below filed a response all of which was before the trial court. The order denying the motion for sanctions states that the court considered the motion and denied it. Thus, there was evidence before the court which the court considered and made a ruling, and the *Bedding* case cited is distinguishable or not applicable. (citations to record omitted).

The appellate record does not include a reporter's record of the summary judgment hearing. The trial court's order denying appellees' motion for sanctions states in relevant part that "the Court considered [appellees'] Motion for Sanctions and the Court hereby DENIES" such motion. (emphasis original). That order makes no mention of a hearing or any evidence considered. Further, appellees state in their appellate brief that "[t]here were no evidentiary hearings below." Therefore, we cannot agree with appellees that the record shows rule 13's requirement respecting an evidentiary hearing on the motion for sanctions was satisfied. *See Keith,* 256 S.W.3d at 917; *In re Lewis,* 2010 WL 177817, at *2; *McCain,* 856 S.W.2d at 757. Further, the record does not show any objection by appellees to the lack of the required evidentiary hearing. *Cf. Trussell Ins. Servs., Inc. v. Image Solutions, Inc.,* No. 12–09–00390–CV, 2010 WL 5031100, at *4 (Tex.App.-Tyler Dec. 8, 2010, no pet.) (mem. op.) (where party failed to object to nonevidentiary hearing on motion for sanctions and failed to secure evidentiary hearing on such motion, party waived right to sanctions). On this record, we cannot conclude the trial court's denial of appellees' motion for sanctions was an abuse of discretion. We decide against appellees on their cross-issue.

### IV. RULE 45 DAMAGES

In a "cross-point," appellees assert D Design's appeal is frivolous and just damages should be imposed pursuant to rule 45 of the Texas Rules of Appellate Procedure. Specifically, appellees argue (1) there is no reasonable expectation of reversal of the trial court's summary judgment ruling on appeal and (2) D Design

had notice of and ignored the deadline to timely file its appellate brief. Appellees contend they have been damaged by "having to incur attorney's fees and expenses in responding to the frivolous appeal and lawsuit below" and should be awarded such fees and expenses as damages.

D Design responds that the record shows this Court granted its motion to extend the deadline for filing its appellate brief and its brief was thereafter timely filed. Further, D Design contends its position is not "sanctionable" because such position is supported by both the contract and the assignment.

### A. Applicable Law

Under Texas Rule of Appellate Procedure 45, this Court is authorized, on "motion of any party"[2] or on our own initiative, to award "just damages" if we determine an appeal is "frivolous" based on consideration of "the record, briefs, or other papers filed in the court of appeals." TEX.R.APP. P. 45. Recovery is authorized if an appeal is objectively frivolous and injures the appellee. *Keith,* 256 S.W.3d at 919; *Njuku v. Middleton,* 20 S.W.3d 176, 178 (Tex.App.-Dallas 2000, pet. denied). An appeal is frivolous if, at the time asserted, the advocate had no reasonable grounds to believe judgment would be reversed or when an appeal is pursued in bad faith. *Keith,* 256 S.W.3d at 919–20; *Njuku,* 20 S.W.3d at 178. We impose sanctions only under those circumstances we find truly egregious. *Univ. of Tex. Sys. v. Carter,* No. 05–07–00592–CV, 2008 WL 484178, at *3 (Tex.App.-Dallas Feb. 25, 2008, pet. denied) (mem. op.).

Four factors that tend to indicate an appeal is frivolous are (1) the unexplained absence of a statement of facts, (2) the unexplained failure to file a motion for new trial when it is required to successfully assert factual sufficiency on appeal, (3) a poorly written brief raising no arguable points of error, and (4) the appellant's unexplained failure to appear at oral argument. *Faddoul, Glasheen & Valles, P.C. v. Oaxaca,* 52 S.W.3d 209, 213 (Tex.App.-El Paso 2001, no pet.).

### B. Analysis

Appellees do not dispute that D Design filed its brief within the extended deadline granted by this Court at D Design's request. Appellees cite no authority, and we have found none, supporting the position that filing an appellate brief within the time period allowed by this Court makes an appeal objectively frivolous. Further, while the case law does not indicate that the four factors described in *Faddoul* are exclusive, none of those factors are implicated here. *See Faddoul, Glasheen & Valles, P.C.,* 52 S.W.3d at 213. Rather, D Design appeared at oral argument and filed a brief and reply brief containing reasoned arguments with citations to authority and to the record. Appellees cite no authority, and we have found none, supporting the position that disagreement as to the factual and legal assertions in a case warrants rule 45 damages. *Cf. Mattox v. Grimes Cnty. Commissioner's Ct.,* 305 S.W.3d 375, 386 (Tex. App.-Houston [14th Dist.] 2010, pet. denied) (rule 13 sanctions not warranted by disagreement as to factual and legal asser-

**2.** D Design asserts appellees "did not file a motion requesting damages as required by the rule." However, to the extent that assertion is intended as a ground for denying appellees rule 45 damages, D Design cites no authority, and we have found none, supporting the position that rule 45 damages cannot be asserted in a cross-point. *Cf. Pantaze v. Yudin,* 229 S.W.3d 548, 552 (Tex.App.-Dallas 2007, pet. dism'd w.o.j.) (addressing request for rule 45 damages asserted by appellee in cross-point).

tions in case). Additionally, appellees contend "[t]he frivolous nature of D Design's position and appeal is also shown by its Motion for New Trial," which "was defective in that it failed to meet the specificity requirements" of the rules of civil procedure. Appellees argue, "While the defective Motion for New Trial alone might not be sufficient to support a frivolous appeal, it, in combination with D Design's frivolous position does show its bad faith and that it has no reasonable expectation for reversal." However, in light of the foregoing analysis, we cannot agree that such asserted "combination" of factors meets the standard for recovery under rule 45. *See* TEX.R.APP. P. 45.

In support of their argument, appellees cite two cases, *Smith v. Brown*, 51 S.W.3d 376 (Tex.App.-Houston [1st Dist.] 2001, pet. denied), and *Lee v. Aurora Loan Services, L.L.C.*, No. 06–08–00077–CV, 2009 WL 167067 (Tex.App.-Texarkana Jan. 27, 2009, no pet.) (mem. op.). However, neither of those cases involved a fact situation similar to the case at issue. In *Smith*, rule 45 damages were awarded against a party who obtained a declaratory judgment partially releasing some liens, dropped his appeal, then sued again for damages based on the same liens. *See Smith*, 51 S.W.3d at 380. *Lee* involved an appellant whose sole ground for appeal was not preserved for review. *See Lee*, 2009 WL 167067, at *3. We do not find those cases persuasive.

Although we have rejected D Design's contentions on appeal regarding the trial court's summary judgment ruling, we conclude that appeal was not frivolous. *See* TEX.R.APP. P. 45. We decide appellees' "cross-point" against them.

## V. CONCLUSION

We conclude the trial court did not err by granting appellees' motion for summary judgment or by denying appellees' motion for rule 13 sanctions. Further, we conclude D Design's appeal regarding the trial court's summary judgment ruling was not frivolous. We decide against D Design on its sole issue on direct appeal and against appellees on their cross-issue and "cross-point."

The trial court's orders are affirmed.