**Affirmed; Opinion Filed January 21, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01309-CV

## MCS MINERALS, LTD AND JOHN AND JULIE MARTIN, CO-TRUSTEES FOR THE MARTIN FAMILY REVOCABLE TRUST, Appellants
### V.
## PLAINS EXPLORATION & PRODUCTION COMPANY, Appellee

On Appeal from the 95th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-10-15627-D

## MEMORANDUM OPINION
Before Justices Moseley, Lang, and Brown
Opinion by Justice Moseley

Appellants MCS Minerals, Ltd. and John and Julie Martin, Co-Trustees for the Martin Family Revocable Trust, (collectively MCS) are non-operating working interest owners in an oil and gas lease operated by Plains Exploration & Production Company (Plains). Based on its interpretation of the JOA, MCS sued Plains to recover alleged overcharges to the joint account for "district and camp expenses."

The trial court determined the JOA provision was ambiguous and submitted a question about its meaning to a jury, which found in favor of Plains's interpretation of the JOA. The trial court rendered judgment that MCS take nothing on its breach of contract claim against Plains. MCS's motions for judgment notwithstanding the verdict and for new trial were overruled by

operation of law.

MCS appeals. In two issues, it argues that under the unambiguous terms of the JOA, Plains overcharged it for district and camp expenses. The background of the case and the evidence adduced at trial are well known to the parties; thus, we do not recite them here in detail. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We conclude the JOA provision is ambiguous and the trial court did not err by submitting the question to the jury. We affirm the trial court's judgment.

## BACKGROUND

The lease is operated under a JOA signed in 1960. MCS acquired non-operating working interests in the lease in 1992 and 1999. Plains took over as operator in 2007 and resigned in 2012. However, in 2009 a dispute arose between MCS and Plains about charges to the joint account for district and camp expenses under Exhibit C to the JOA. MCS sued Plains in December 2010 for breach of the JOA.

MCS contends the accounting procedure exhibit to the JOA is unambiguous and paragraph 11 of the exhibit contains a specifically negotiated flat rate per well charge for all district, camp, and administrative overhead charges. Plains contends the exhibit is unambiguous and that the per well rates are in addition to the district and camp expenses calculated according to paragraph 11 of the exhibit. The trial court concluded the paragraph was ambiguous. Both parties agree that if we determine the paragraph is ambiguous, the trial court correctly submitted the issue to the jury and the judgment should be affirmed.

## STANDARD OF REVIEW AND APPLICABLE LAW

We review the denial of a motion for judgment notwithstanding the verdict under a no-evidence standard. *See Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009); *Manley v. Wachovia Small Bus. Capital*, 349 S.W.3d 233, 236–37 (Tex. App.—Dallas

2011, pet. denied). MCS argues the trial court should have disregarded the jury's verdict because the JOA is not ambiguous and the jury question should not have been submitted.

Whether an agreement is ambiguous is a question of law, which we review de novo. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983); *D Design Holdings, L.P. v. MMP Corp.*, 339 S.W.3d 195, 201 (Tex. App.—Dallas 2011, no pet.). If a contract is not ambiguous, the court will construe the contract as a matter of law. *Coker*, 650 S.W.2d at 393. If a contract is ambiguous, the intent of the contracting parties is an issue of fact. *Coker*, 650 S.W.2d at 394.

A contract is unambiguous if it can be given a definite or certain legal meaning. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent. *Id.* In construing a written contract, our primary concern is to ascertain the true intentions of the parties as expressed in the instrument. To achieve this objective, we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Id.* No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Id.*

A contract is not ambiguous simply because the parties advance conflicting interpretations of the contract. *Dynegy Midstream Services, Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009); *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). If we are unable to harmonize the provisions and give effect to all clauses, and the contract is susceptible to more than one reasonable interpretation, we will find the contract ambiguous. *United Protective Servs., Inc. v. W. Vill. Ltd. P'ship*, 180 S.W.3d 430, 432 (Tex. App.—Dallas 2005, no pet.).

ANALYSIS

The parties' dispute hinges on the proper interpretation of paragraph 11 of Exhibit C to the JOA, entitled District and Camp Expense (Field Supervision and Camp Expense). The first part of that paragraph is a preprinted form and the last part is typed. Paragraph 11 states:

## II. Development and Operating Charges

*Subject to limitations hereinafter prescribed, Operator shall charge the joint account with the following items:*

\* \* \*

**11.     District and Camp Expense (Field Supervision and Camp Expense)**

A pro rata portion of the salaries and expenses of Operator's production superintendent and other employees serving the joint property and other properties of the Operator in the same operating area, whose time is not allocated directly to the properties, and a pro rata portion of the cost of maintaining and operating a production office known as Operator's _____South Texas District_____ office located at or near _____Houston, Texas_____ (or a comparable office if location changed), and necessary suboffices (if any), maintained for the convenience of the above-described office, and all necessary camps, including housing facilities for employees if required, used in the conduct of the operations on the joint property and other properties operated in the same locality. The expense of, less any revenue from, these facilities should be inclusive of depreciation or a fair monthly rental in lieu of depreciation on the investment. Such charges shall be apportioned to all properties served on some equitable basis consistent with Operator's accounting practice. Such charges shall also cover those charges normally made under Paragraph 12 of this Section II and shall be in lieu of any charges made thereunder. The charges shall be on a well basis as follows:

> Well Basis (Rate Per Well Per Month)

| Drilling Well Rate | Producing Well Rate |
|---|---|
| $450.00 | $100.00 |

Paragraph 12 of the standard form was deleted by the original contracting parties; that paragraph normally permitted the operator to charge the joint account for management and administrative overhead charges in lieu of expenses of the operator's offices not covered by paragraph 11. The form includes blanks for the parties to specify rates per well per month for

drilling wells and for producing wells.[1]

The first sentence of paragraph 11 allows the operator to calculate and charge the joint account a pro rata portion of salaries and expenses for certain employees and a pro rata portion of the costs of maintaining certain offices. The second sentence specifies that the expenses, less any revenue, shall be inclusive of depreciation or a fair monthly rental in lieu of depreciation. The third sentence requires the operator to apportion such charges to all the properties served on some equitable basis consistent with the operator's accounting practice. The parties do not dispute the meaning of this portion of paragraph 11 and we agree it is clear.

The last two sentences of paragraph 11 are typed. The first typed sentence reads, "Such charges shall also cover those charges normally made under Paragraph 12 of this Section II and shall be in lieu of any charges made thereunder." The parties agree that "such charges" in this sentence refers to the district and camp expenses described in the first three sentences of the paragraph. The last typed sentence begins, "The charges shall be on a well basis as follows:" and ends with per well per month rates of $450.00 for drilling wells and $100.00 for producing wells.

MCS contends paragraph 11 is unambiguous and sets a flat rate that the operator may charge the joint account for all district, camp, field supervision, and administrative overhead (normally made under paragraph 12) expenses. MCS argues the first three sentences of paragraph 11 merely describe certain overhead expenses and the paragraph "then limits such expenses in its final (typed) sentences." According to MCS, "the charges" in the last typed sentenced means "such charges" as used in the first typed sentence and limits all charges under paragraph 11 to the per well rates listed in the last sentence.

---

[1] The standard form of paragraph 12 at the time the JOA was executed was admitted in evidence as part of the circumstances surrounding execution of the JOA.

Plains contends paragraph 11 is unambiguous and means the operator may charge the joint account the district, camp, and field supervision expenses calculated according to the first three sentences of paragraph 11, then add the per well rates listed in the last two sentences of that paragraph in lieu of administrative overhead expenses normally made under paragraph 12 of the standard form. Plains argues the first typed sentence provides that the district and camp expenses "shall also cover" (i.e. include) the overhead charges normally made under paragraph 12 of the standard form. The phrase "the charges" in the last typed sentence refers to those charges normally made under paragraph 12 and sets per well monthly rates that may be charged as part of the district and camp expenses. In other words, Plains contends "the charges" does not mean the same things as "such charges." We agree that because the parties used different phrases, it is reasonable that they meant different things by "such charges" and "the charges."

Plains argues that MCS's interpretation is unreasonable because it ignores and renders meaningless the first three sentences of paragraph 11. But even if MCS's interpretation is not reasonable, there is yet another reasonable interpretation that would give effect to all of the terms of the JOA: the operator may charge the district and camp expenses calculated under the first three sentences of paragraph 11 up to but not more than the per well basis stated in the last two sentences of the paragraph.[2]

Where we cannot harmonize the provisions and give effect to all clauses, and the agreement is susceptible to more than one reasonable interpretation, the agreement is ambiguous. *United Protective Severs.*, 180 S.W.3d at 432. The court must favor an interpretation that affords some consequence to each part of the instrument so that none of the provisions will be rendered

---

[2]To illustrate: let A represent the district and camp expenses calculated under the first three sentences of paragraph 11 and B represent the per well rates shown in the last two sentences of the paragraph. One interpretation of paragraph 11 is that the operator may charge the joint account the amount under A up to but not greater than B (A ≤ B). Another interpretation, advanced by MCS, is that the operator may charge the joint account only the amount under B (A = B). Yet another interpretation, advanced by Plains, is that the operator may charge the joint account the amount under A plus the amount under B (A + B).

meaningless.  *Coker*, 650 S.W.2d at 394.  We conclude the JOA provision is subject to more than one reasonable meaning.  *See J.M. Davidson*, 128 S.W.3d at 229.  Therefore it is ambiguous.

<h2 style="text-align:center">CONCLUSION</h2>

We conclude the JOA provision is ambiguous and thus the trial court properly submitted the question of the parties' intent to the jury.  We overrule MCS's two issues.  We need not address Plains's cross-point.  *See* TEX. R. APP. P. 47.1.

We affirm the trial court's judgment.


/Jim Moseley/
JIM MOSELEY
JUSTICE


121309F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MCS MINERALS, LTD AND JOHN AND
JULIE MARTIN, CO-TRUSTEES FOR
THE MARTIN FAMILY REVOCABLE
TRUST, Appellants

No. 05-12-01309-CV        V.

PLAINS EXPLORATION &
PRODUCTION COMPANY, Appellee

On Appeal from the 95th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-10-15627-D.
Opinion delivered by Justice Moseley.
Justices Lang and Brown participating.

     In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

     It is **ORDERED** that appellee PLAINS EXPLORATION & PRODUCTION COMPANY recover its costs of this appeal from appellants MCS MINERALS, LTD AND JOHN AND JULIE MARTIN, CO-TRUSTEES FOR THE MARTIN FAMILY REVOCABLE TRUST.

Judgment entered this 21st day of January, 2014.

/Jim Moseley/
_____
JIM MOSELEY
JUSTICE