**Opinion filed May 13, 2021**



# In The

# Eleventh Court of Appeals

_____

## No. 11-19-00185-CV

_____

## IN THE GUARDIANSHIP OF A.B.,
## AN INCAPACITATED PERSON

**On Appeal from the County Court at Law**
**Taylor County, Texas**
**Trial Court Cause No. 1390**

### O P I N I O N

This is an appeal from an Order Authorizing Payment of Attorney's Fees and an Order Authorizing Payment of Attorney Ad Litem's Fees and Expenses in a guardianship proceeding. On appeal, Appellant raises two issues and argues that (1) the trial court lacked jurisdiction to award attorney's fees and costs against him and (2) the trial court abused its discretion in assessing attorney's fees and costs against him. We affirm.

*Background Facts*

On July 3, 2018, A.B.'s mother filed an Application for Appointment of Permanent Guardian of the Person and Estate of A.B. On October 8, 2018, A.B.'s father (Appellant) filed an opposition to Appellee's application. Therein, Appellant represented to the court that "[A.B.] is very competent and can easily function with a modest amount of assistance from those closest to her" and that "[a] power of attorney held by someone who loves her would easily rectify any deficits she has in functioning on her own." The hearing on the application was held before the county court at law on February 5, 2019.

At the hearing, Appellee testified that she believed that A.B. was incapacitated. A.B., who was eighteen at the time of the hearing, had been previously diagnosed with a learning disability and was enrolled in special education classes in her high school. Appellee testified that, while A.B. can do some things, like dress and feed herself, she did not believe that A.B. could make business or financial decisions or manage money. In addition, she did not believe that A.B. had the capacity to make decisions regarding important life skills for an adult, like managing a bank account, driving or operating a motor vehicle, voting, marriage, making living arrangements, health care, or giving informed consent for medical or dental treatment.

Appellee testified that A.B.'s doctor, Dr. Paige LeMasters completed a physician evaluation and determined that A.B. was partially incapacitated and in need of a guardian of her person and estate. Dr. LeMasters's evaluation also noted that it was possible that A.B.'s condition could improve and that the matter of her incapacity should be revisited in the next ten years—a possibility that Appellee did not oppose. Appellee further stated that she had explored alternatives to guardianship, but she did not think that they would meet the needs of A.B.

Appellant then testified in opposition to Appellee's appointment as guardian. Appellant had been divorced from Appellee since 2005. He testified that he believed A.B. was not fully incapacitated and could function independently, but with assistance. When cross-examined however, Appellant did not disagree with Dr. LeMasters's evaluation of A.B. and testified that, if a guardian were appointed, he believed that it would be in A.B.'s best interest for Appellee to be A.B.'s guardian.

Regarding alternatives to guardianship, Appellant testified that "joint guardianship" was an option and that a "support agreement" "seem[ed] very logical," but Appellant admitted that he did not really understand what a "supported decision-making agreement" was. Appellant admitted that he did not regularly exercise his court-ordered right to visitation of A.B. He had attended none of A.B.'s visits to the doctor and none of A.B.'s Admission, Review, and Dismissal (ARD) meetings, and he had met none of A.B.'s counselors. When he learned about Appellee filing her application for guardianship, he did admit that his concern, at least in part, included his continued child support obligations. Regarding this concern, he sent Appellee a text message that read, "It leaves me open to paying support to her for as long as you have sole guardianship."

At the conclusion of the hearing, the trial court granted Appellee's application and named her guardian of the person and estate of A.B. On March 11, 2019, A.B.'s attorney ad litem filed an Application for Payment of Attorney Ad Litem's Fees and Expenses. And on March 13, 2019, Appellee filed an Application to Pay Attorney's Fees and a Motion to Reimburse Guardianship Estate for Attorney's Fees and Costs, seeking reimbursement from Appellant and asserting that Appellant lacked just cause in filing his opposition. Appellant in turn filed a response. After a hearing, the trial court, in orders dated May 2, 2019, ordered Appellant to pay a portion of

the attorney ad litem fees and a portion of Appellee's attorney's fees. The trial court found that Appellant had "acted in bad faith or without just cause in objecting to the Application for Appointment of Permanent Guardian of the Person and Estate" of A.B.

*Standard of Review*

"We review a court's award to a guardian of attorney's fees related to the guardianship application for an abuse of discretion." *Meduna v. Holder*, No. 03-02-00067-CV, 2003 WL 124214, at *3 (Tex. App.—Austin Jan. 16, 2003, no pet.) (mem. op.). Thus, we "reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable." *In re Guardianship of Laroe*, No. 05-15-01006-CV, 2017 WL 511156, at *20 (Tex. App.—Dallas Feb. 8, 2017, pet. denied) (mem. op.). In addition, we view the evidence in the light most favorable to the trial court's decision "and cannot substitute our judgment for that of the trial court as long as the trial court did not abuse its discretion." *Meduna*, 2003 WL 124214, at *3.

*Analysis*

**I. The trial court had plenary power and jurisdiction to award attorney's fees against Appellant.**

In his first issue, Appellant claims that the trial court did not have jurisdiction to award attorney's fees and costs against him. Specifically, he argues that the trial court's plenary power to modify the guardianship judgment expired on March 13, 2019. Generally, parties can appeal only from final judgments. *In Guardianship of Macer*, 558 S.W.3d 222, 226 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001)). "Probate proceedings, however, are an exception to the 'one final judgment' rule." *Id.* (quoting *De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006)). This is because probate proceedings involve "'a continuing series of events,' and later decisions

4

regarding administration of an estate or guardianship of a ward necessarily may be based on earlier decisions in the proceeding." *Id.* (quoting *In re Estate of Adams*, No. 14-12-00064-CV, 2013 WL 84925, at *2 (Tex. App.—Houston [14th Dist.] Jan. 8, 2013, no pet.) (mem. op.).

In cases such as these, "multiple judgments final for purposes of appeal can be rendered on certain discrete issues." *De Ayala*, 193 S.W.3d at 578 (quoting *Lehmann*, 39 S.W.3d at 192). Moreover, if no express statute controls, a probate court order is final and appealable if it "dispose[s] of all parties or issues in a particular phase of the proceedings." *Id.* at 579. Thus, orders concerning reimbursement for a guardianship estate are final for purposes of appeal because they "conclud[e] a discrete phase of the guardianship proceeding." *See Macer*, 558 S.W.3d at 228. Concerning the trial court's plenary power, "[t]he trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment within thirty days after the judgment is signed." TEX. R. CIV. P. 329b(d).

Appellant in his brief appears to argue that because the guardianship order was final, the trial court's plenary power as to all other discrete issues concerning the guardianship expired thirty days after the guardianship order. We disagree. The fact that the guardianship order was final did not deprive the trial court of its plenary power over the entire proceeding, which includes all discrete issues concerning the guardianship, such as attorney's fees. *See Macer*, 558 S.W.3d at 231; *see also Guardianship of Yang*, No. 02-16-00353-CV, 2017 WL 2979826, at *1, *3 (Tex. App.—Fort Worth July 13, 2017, pet. denied) (mem. op.) (appellate court affirmed award of attorney's fees in guardianship proceeding where application for attorney's fees was filed over two months after guardianship order).

Thus, we find that, at the time ordered, the trial court did have jurisdiction to award attorney's fees and costs against Appellant, and we overrule Appellant's first issue.

**II. The trial court did not abuse its discretion in awarding attorney's fees against Appellant where he contested the application for guardianship "without just cause."**

*The Estates Code does not define the terms.*

In his second issue, Appellant argues that, even if the trial court had jurisdiction, it nevertheless erred when it ordered him to pay attorney's fees. The Texas Estates Code authorizes a court to award attorney's fees against a party who the court finds "acted in bad faith or without just cause in prosecuting or objecting to an application in the proceeding." TEX. EST. CODE ANN. §§ 1155.054(d), §§ 1155.151(c) (West 2020). Texas case law has produced few appellate court opinions that have discussed these fairly young statutory provisions concerning attorney's fees. *See Yang*, 2017 WL 2979826, at *3; *Laroe*, 2017 WL 511156, at *20. Indeed, we find no code-specific definitions given by the legislature for "bad faith" or "without just cause" in the context of these Estates Code statutory provisions.

*The trial court decides.*

There are other provisions in Texas law that provide that a party may recover attorney's fees for causes of action brought in bad faith. For instance, under the Texas Deceptive Trade Practices Act, a defendant may recover attorney's fees and court costs from the plaintiff who files a groundless, bad faith, or harassing lawsuit. TEX. BUS. & COM. CODE ANN. § 17.50(c) (West 2011). The Texas Supreme Court has held that it is the trial court, not the jury, that must decide the issues of groundlessness, bad faith, and harassment. *Donwerth v. Preston II Chrysler-Dodge, Inc.*, 775 S.W.2d 634, 637 (Tex. 1989). Similarly, Sections 1155.054(d) and

6

1155.151(c) of the Texas Estates Code use language indicating that it is the trial court which must decide whether a party objecting to a guardianship application acted "in bad faith or without just cause." EST. §§ 1155.054(d), 1155.151(c). While the Business and Commerce Code and the Texas Estates Code use differing offenses in conjunction with bad faith that might result in a recovery of attorney's fees, in both statutes it is the trial court as both factfinder and judge of the law that must make the determination.

*Statutory construction*

"When construing a statute, our primary objective is to give effect to the Legislature's intent. We seek that intent 'first and foremost' in the statutory text." *Colorado Cty v. Staff*, 510 S.W.3d 435, 444 (Tex. 2017) (quoting *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015)). This is because "[t]he plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). In addition, "we give meaning to the language consistent with other provisions in the statute." *In re Womack*, 549 S.W.3d 760, 764 (Tex. App.—Waco 2017, orig. proceeding [mand. denied]). Nevertheless, in determining the meaning of an undefined word in a statute, "we may consider a variety of sources, including dictionary definitions, judicial constructions of the term, and other statutory definitions." *Colorado Cty.*, 510 S.W.3d at 448.

A. Bad Faith

There is a general consensus throughout all areas of the law that actions done in "bad faith" are the result of dishonest intent. For example, in *In re Guardianship of Laroe*, the Dallas Court of Appeals looked to cases that interpreted bad faith using language from Rule 13 of the Texas Rules of Civil Procedure to aid in its

interpretation of Section 1155.151(c) of the Texas Estates Code. *Laroe*, 2017 WL 511156, at *21.[1] In *Laroe*, the Dallas Court of Appeals stated: "Bad faith is not simply bad judgment or negligence, but is the 'conscious doing of a wrong for dishonest, discriminatory, or malicious purpose.'" *Id.* (quoting *Elkins v. Stotts–Brown*, 103 S.W.3d 664, 669 (Tex. App.—Dallas 2003, no pet.)). The court further explained that "[i]mproper motive is an essential element of bad faith." *Id.*

In the context of an award of attorney's fees in a trespass to try title action, the trial court must award attorney's fees if it finds that a claim of adverse possession was groundless and made in bad faith. TEX. CIV. PRAC. & REM. CODE ANN. § 16.034(a)(1) (West Supp. 2020). Under these circumstances, once again, bad faith "requires the conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose." *Nac Tex Hotel Co. v. Greak*, 481 S.W.3d 327, 334 (Tex. App.—Tyler 2015, no pet.). This same definition is also used to define bad faith in the context of consumer suits for DTPA violations and Rule 13 sanctions. *See Riddick v. Quail Harbor Condo. Ass'n*, 7 S.W.3d 663, 677 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *see also D Design Holdings, L.P. v. MMP Corp.*, 339 S.W.3d 195, 203 (Tex. App.—Dallas 2011, no pet.).

The definition of bad faith appearing fairly uniform as used in other contexts, we find it appropriate to apply the same definition to the subject provisions of the Estates Code as well. The record examined in its totality does not reflect that there was sufficient evidence, direct or circumstantial, presented to the trial court that Appellant opposed a guardianship for A.B. for any dishonest, discriminatory, or

---

[1]*Laroe* involved a motion to remove a guardian and is one of the few decisions (although not reported) that deals directly with an award of attorney's fees under Section 1155.151(c) of the Texas Estates Code. The *Laroe* court, while addressing bad faith, virtually ignored the statute's language "or without just cause" even though the trial court found that the movant had acted "in bad faith and without just cause." 2017 WL 511156, at *21. For the reasons set out in this opinion, we reject any implication that a lack of bad faith forecloses a trial court from awarding attorney's fees against a party who contests "without just cause" an application for guardianship.

malicious purpose.  Thus, we cannot say that it was within the trial court's discretion to find that Appellant acted in bad faith.  Yet, this does not end our analysis.

### B. Just Cause

As previously stated, the Estates Code allows the trial court to award attorney's fees against a party who acts in "bad faith or without just cause."  EST. §§ 1155.054(d), 1155.151(c).  The word "or" in the statute is disjunctive, which means that, to award attorney's fees against a party, the trial court could find that that party acted solely in bad faith or, in the alternative, solely without just cause.  *In re Brookshire Grocery Co.*, 250 S.W.3d 66, 69 (Tex. 2008).  We hold that an *affirmative* finding of bad faith necessarily subsumes the definition of "without just cause" but not vice versa.  Thus, we must now discuss the meaning of "just cause."

Elsewhere in the Estates Code, it provides that the executor of a will who defends a will or prosecutes any proceeding "in good faith *and* with just cause" is allowed, from the estate, necessary expenses and disbursements in those proceedings, including reasonable attorney's fees.  EST. § 352.052 (emphasis added).  In analyzing this language, the El Paso Court of Appeals stated: "'With just cause' means that the actions 'in this proceeding were based on reasonable grounds and there was a fair and honest cause or reason for said actions.'"  *In re Kam*, 484 S.W.3d 642, 654–55 (Tex. App.—El Paso 2016, pet. denied) (quoting *Ray v. McFarland*, 97 S.W.3d 728, 730 (Tex. App.—Fort Worth 2003, no pet.)).  That definition requires fair and reasonable factual grounds presented in support of the party's objection.  This same definition was used to define just cause in the jury instructions for an action involving admittance of a written will to probate.  *See In re Estate of Longron*, 211 S.W.3d 434, 439 (Tex. App.—Beaumont 2006, pet. denied).  In this application, the definition of good faith might not always subsume actions taken with just cause.

In general then, the term "just cause" contains an essential element of reasonable factual grounds that may be fairly applied to the legal action at issue. For an action to be brought with just cause, factual grounds in support of the action must exist and be presented, and those grounds must be reasonably applicable to the proffered legal basis relied upon. It follows, then, that for the trial court to find that a party acted "without just cause," the party must have either (1) provided no evidence of factual grounds for bringing the action or (2) provided grounds that were unreasonable or did not support the legal basis proffered. While an essential component of bad faith includes improper motive, the concept of without just cause addresses an absence of legal basis or a dearth of factual support.

Accordingly, in the context of Sections 1155.054(d) and 1155.151(c) of the Estates Code, it is not enough that a legal basis be claimed or even that a contestant be a parent or interested family member objecting because he is of a different opinion. But rather, the challenge must have a legal basis that is reasonable under the circumstances and must be factually supported during the hearing. If not, that party contests without just cause and compels the trial court and the proponent of the guardianship to expend the additional time, costs, and attorney's fees necessary for a contested hearing. "Without just cause" may include a situation where a party is unable to provide any evidence raising a substantial fact issue on that party's claim. *See Estate of Huffhines*, No. 02-15-00293-CV, 2016 WL 1714171, at *7–8 (Tex. App.—Fort Worth Apr. 28, 2016, pet. denied) (mem. op.) (where the court found an estate's claim or objection was brought in "bad faith" because it was not factually supported). Further, in using this definition, the court is able to consider reckless ignorance of the current condition and/or needs of the prospective ward for whom application of guardianship is at issue.

With regard to an application for guardianship, an interested party that is not adverse to the ward may properly contest the application with just cause (as long as it is not done in bad faith). *See* EST. § 1055.001. The Estates Code clearly requires the trial court to function as the factfinder, and when a guardianship application contest is made without just cause (*or* in bad faith), attorney's fees may be assessed. *See id*. §§ 1155.054(d), .151(c). For purposes of an award of attorney's fees, a trial court is entitled to make inferences from the factual evidence as to a party's motivation and credibility. *McCain v. NME Hosps., Inc.*, 856 S.W.2d 751, 757–58 (Tex. App.—Dallas, 1993, no writ).

Our analysis applied to the matter before this court begins with Appellant's pleading opposing a guardianship for his daughter, A.B. In that pleading, Appellant represented to the trial court that "[A.B.] is very competent and can easily function with a modest amount of assistance" and that "[a] power of attorney held by someone who loves her would easily rectify any [functional] deficits." In stark contrast, when questioned at the guardianship hearing, he gave the following testimony:

Q. Well, I'm just asking you if you disagree with the physician's evaluation?

A. Uh, no.

Q. So Doctor LeMasters has given an opinion with regard to things Aubrey can and cannot do in her estimation responsibly. Doctor LeMasters believes that she cannot make complex business, managerial, or financial decisions. Do you agree or disagree with that?

A. Yes.

Q. You agree?

A. Yes.

Q. That she cannot manage a personal bank account, we covered that. Do you believe that Aubrey can safely operate a motor vehicle?

A. No.

Q. Doctor LeMasters believes that she can't responsibly vote in a public election. Do you agree with that?

A. Yes.

Q. And she can't make responsible decisions concerning marriage, do you agree with that?

A. Yes.

Q. She can't responsibly determine where she should live. Now that she's 18, she could choose to live on her own theoretically. Do you believe that she could responsibly make a decision to choose to live on her own at this time?

A. No, sir.

Q. Do you believe that she could responsibly understand and consent to medical or dental treatment?

A. No, sir.

Q. Or responsibly understand or consent to psychological or psychiatric treatment?

A. No, sir.

Appellant further admitted that A.B. was not a good judge of character and that she was unduly susceptible to the influence of other people. Further, it was conceded that A.B. is not able to provide her own food, clothing, or shelter.

As a matter of law, the trial court cannot appoint a guardian for a proposed ward unless the trial court finds by clear and convincing evidence that the proposed ward is an incapacitated person and that alternatives to guardianship and supports and services that would avoid the need for a guardianship were considered and determined not to be feasible. EST. § 1101.101(a)(1). An "incapacitated person" includes an "an adult who, because of a physical or mental condition, is substantially unable to: (A) provide food, clothing, or shelter for himself or herself; (B) care for

12

the person's own physical health; or (C) manage the person's own financial affairs." Est. § 1002.017(2).

Appellant contested guardianship, yet all of Appellant's testimony above admits incapacity. Appellant's testimony quoted above did not present to the trial court evidence of reasonable grounds or even *any* grounds for opposing a guardianship for A.B. Indeed, by his testimony, Appellant agreed with all of the statutory elements required to find A.B. incapacitated. Further, in Appellant's opposition filed with the trial court, his principal proposed alternative to guardianship was designation by A.B. of an agent by a power of attorney. A power of attorney, however, would not be feasible according to Appellant's own statements and is not a viable alternative to guardianship because the principal must have the mental capacity to execute a power of attorney, and Appellant himself agreed that A.B. was incapacitated. *See In re Estate of Vackar*, 345 S.W.3d 588, 597 (Tex. App.—San Antonio 2011, no pet.). He testified that A.B. had no concept of the nature of even the then current legal proceeding, though it had been explained to her.

The record further reveals that Appellant suggested a joint guardianship between him and his ex-wife while at the same time admitting that he traveled as a pipeline superintendent and, thus, had not been "available" for weekend visits or his thirty-day summer visitation rights with A.B. since she was thirteen. The trial court also considered testimony that A.B. lived with Appellee and that Appellant did not attend any of A.B.'s doctor visits, did not attend any of A.B.'s ARD meetings, and had not met with any of A.B.'s school counselors even in preparation for the hearing on guardianship for A.B., which he opposed. Further, in his text messages that were admitted into evidence, Appellant demonstrated underlying concern with being released from child support obligations. Moreover, while not conceding that a guardianship was necessary, he agreed that A.B.'s mother, who applied to become

13

the guardian, would be a choice in A.B.'s best interest. Considering these facts, it was within the trial court's discretion to find that Appellant presented no substantial factual grounds to support his opposition to guardianship.

In addition to his own testimony demonstrating a lack of personal knowledge upon which the trial court could have relied to deny the application, Appellant presented the testimony of A.B.'s aunt, Shay Bolm. Bolm had a master's degree in education and was a school counselor at the time of the hearing. Although Bolm testified that she worked with students with intellectual disabilities and students in special education, she made it clear that her testimony and opinions were given outside of the academic realm. Bolm did not testify as an expert. She presented no testimony that she had tested A.B. or had even worked with A.B. in academic settings. Rather, Bolm testified that she had known A.B. since her birth and would often interact with her at family gatherings—approximately six times per year. She stated that A.B. had "great communication skills" and that her interactions with others were "extremely normal." However, she directly admitted not only that A.B. was incapacitated but also that A.B. lacked all of the important life skills previously admitted by Appellant as reflected in his testimony cited herein. Further, Bolm's testimony suggested that A.B. was indeed overly susceptible to the influence of another and that she lacked judgment as to the character of others. She also stated that she believed that A.B. had "some problem-solving skills" and that, not alone, but with adequate counseling, A.B. could make decisions regarding her finances, voting, living arrangements, marriage, etc. Bolm was clear, however, that it was not in A.B.'s best interest to make these decisions independently.

Despite Bolm's assertions in support of Appellant's guardianship opposition, most of her testimony actually supported guardianship. Where it did not, the trial court as factfinder, was entitled give little or no weight to the testimony, and we do

not find that it was unreasonable or arbitrary to have done so—particularly in light of the fact that Bolm was providing a lay opinion as to A.B.'s capacity based on family interactions at holiday gatherings where, notably, A.B. was not in an independent self-functioning setting.

Particularly in legal guardianship proceedings where the best interest of the potential ward is a preeminent consideration, we cannot take lightly the trial judge's role as the trier of fact. This involves the trial court's weighing of evidence and argument and, particularly, its direct evaluation of testimony by Appellant and all live witnesses. This direct evaluation includes the observation of voice inflection, tone and confidence, attitude, and the demeanor of each. From the evidence in the record, we do not find it unreasonable that the trial court found that Appellant did not present just grounds to support his opposition to a guardianship for A.B.

Sections 1155.054(d) and 1155.151(c) of the Texas Estates Code do not permit an award of attorney's fees for every guardianship opposition that is denied. *See GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 731 (Tex. 1993) (holding the same with regard to Rule 13 sanctions). Based on this record, however, we affirm the trial court's award. Appellant contested the application for guardianship, representing to the trial court that "[A.B.] is very competent and can easily function with a modest amount of assistance" and "[a] power of attorney"; however, Appellant did not support that assertion with evidence, and in fact, he himself demonstrated the opposite. Appellant admitted to incapacity, as did his only other witness, his sister. During the hearing, Appellee was clear that, in light of the incapacity of A.B., no alternative to guardianship was appropriate to meet A.B.'s needs. Appellant provided no viable alternatives to guardianship, nor did Appellant factually support any alternative to guardianship. Accordingly, it is difficult to articulate what just cause Appellant actually forwarded and factually supported. He

even admitted that his ex-wife, the applicant, was qualified and that it would be in A.B.'s best interest that she serve as guardian.

The record before us reflects insufficient direct or circumstantial evidence of dishonest, malicious, or discriminatory motivation on the part of Appellant, as is necessary for a finding of bad faith. Because of the disjunctive nature of the applicable statute, however, a finding of "without just cause" provides an independent, alternative basis for an award of attorney's fees in a guardianship proceeding. EST. §§ 1155.054(d), 1155.151(c). In light of the definition of *without just cause*, looking at Appellant's contest in the light most favorable to the trial court's award of attorney's fees, and not substituting our judgment for that of the trial court, we cannot say that there was an abuse of discretion on the part of the trial court in awarding attorney's fees, attorney ad litem fees, and costs under Sections 1155.054(d) and 1155.151(c) of the Texas Estates Code. Thus, we overrule Appellant's second issue.

*This Court's Ruling*

We affirm the orders of the trial court.

W. BRUCE WILLIAMS
JUSTICE

May 13, 2021

Panel consists of: Bailey, C.J,
Trotter, J., and Williams, J.