**Affirm in part; Reverse in part and Opinion Filed April 21, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00544-CV

**HAL CREWS AND DEBRA LEITCH, Appellants**
**V.**
**DKASI CORPORATION, DEBRA H. HOLLEY, DAVID HOLLEY AND ASI GYMNASTICS, INC., Appellees**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-15393**

## OPINION

Before Justices Bridges, Fillmore, and Brown
Opinion by Justice Bridges

Appellants Hal Crews and Debra Leitch, as fifty-percent shareholders in DKASI Corporation, filed a shareholder oppression suit against appellees Debra and David Holley and ASI Gymnastics, Inc. The parties filed cross-motions for summary judgment regarding the interpretation and enforcement of a Rule 11 agreement. The trial court granted the Holleys' motion, denied Crews and Leitch's motion, and later awarded the Holleys $133,840 in attorney's fees.

On appeal, appellants argue (1) the Rule 11 agreement was an unenforceable "agreement to agree" because it lacked essential financing terms; (2) later conduct could not transform incomplete negotiations into an enforceable agreement; (3) the electronically generated signature block at the bottom of the emails creating the purported Rule 11 agreement does not meet the

Rule 11 signature requirement; (4) the Rule 11 agreement is ambiguous as to the meaning of "fair market valuation"; and (5) the trial court abused its discretion by awarding attorney's fees.

We reverse the attorney's fee award of $133,840 in favor of the Holleys. In all other respects, the trial court's judgment is affirmed.

## Background

Hal Crews, Debra Leitch, David Holley, and Debra Holley each owned twenty-five percent of the shares in DKASI Corporation, which owned and operated three gymnastics centers in conjunction with the Holleys' wholly owned company, ASI Gymnastics. Crews, Leitch, and the Holleys entered into an agreement wherein ASI would manage the DKASI gyms in ASI's name, receive all DKASI's income in the name of ASI, and then remit to DKASI the net income attributable to DKASI's operation.

Crews and Leitch later sued the Holleys and ASI for shareholder oppression and derivative claims. Crews and Leitch sought appointment of a receiver for DKASI. Within a few months, the parties began discussions for a "business divorce," in which the Holleys would buy out Crews and Leitch.

The Holleys' attorney sent a proposal on June 7, 2012 that contained six provisions. Provision 1 required each side to designate a business appraiser within fifteen days of the agreement. Provision 2, the substance of which is an issue on appeal, states the following:

> 2.    The designated consultants will, within 14 days of both of their designations, select a 3rd appraiser to evaluate the Plaintiffs' 50% interest in DKASI, assuming those three gyms were <u>operating independently</u> and *without considering the undeveloped land adjacent to the Keller facility* (hereafter referred to as "the Interests"). The consultants will be free to communicate with the 3rd appraiser regarding data, methodology and assumptions. The 3rd appraiser will provide a report with a fair market valuation of the Interests within 30 days of appointment.

(Emphasis in original). Provision 3 required ASI to buy the Interests from Crews and Leitch at the price provided by the third appraiser. Provision 4 discussed the ownership of the "undeveloped land" in Keller. Provision 5 permitted ASI to pay the assigned purchase price in cash or finance it through a ten-year note. The final provision stated the agreement would not settle any remaining claims between the parties.

Crews and Leitch's counsel responded the next day and stated, in relevant part, "My clients agree to paragraphs 1 through 4 of your correspondence. . . . As we discussed, my clients agree to the context of paragraph 5, but do not agree to the specific terms offered, either in terms of amount of down payment, length of payment, and/or interest rate, just to the context of taking payments over time to amortize any balance due." The Holleys' counsel responded, "The heart of my proposal is paragraphs 1-4, to which you have agreed, but we cannot execute on an agreement without reaching a consensus on the mechanics contained in paragraph 5."

Crews and Leitch then proposed a $500,000 down payment, plus the Keller development site with appropriate deed restrictions, and a five-year note amortized at twelve percent interest. The Holleys countered with "6%, 7 years, $250k down, 100% of TCAD value for their half of Keller land."

Crews and Leitch's attorney then said his clients would buy out the Holleys on the same terms they offered to sell. After further discussions, the Holleys' attorney sent another email agreeing to postpone an upcoming deposition if Crews and Leitch agreed to one of the following proposals: "(a) an interest rate of 9% or less, (b) a down-payment of $400,000 or less, or (c) giving the Holleys 100% of the TCAD evaluation of their interest in the Keller property." Crews and Leitch agreed to (c). The Holleys' attorney then sent the following letter, with the email exchanges attached, to Crews and Leitch's attorney and filed it as a Rule 11 Agreement with the trial court on June 13, 2012:

–3–

> Thank you for your proposal at 11:46 a.m.
>
> My clients accept your proposal as reflected by our correspondence attached. Pursuant to our agreement, we are both obligated to designate a business appraiser within 15 days.
>
> I hope we are able to resolve additional issues as effectively as we have resolved the buy-out issue. In that regard, please let me know if you and your clients believe mediation would be worthwhile at this point.

On June 28, 2012, Crews and Leitch filed their notice of designation of business appraiser/consultant "pursuant to paragraph 1 of the correspondence dated June 7, 2012."

On July 19, 2012, the Holleys filed a motion to enforce Rule 11 agreement in which they alleged Crews and Leitch tried to "'change' exactly what the appraiser is charged with evaluating" a full month after filing the original Rule 11 agreement and after both sides had designated their appraiser. The Holleys argued that rather than a neutral appraiser providing a valuation of "Plaintiff's 50% interest in DKASI," Crews and Leitch now argued a neutral appraiser should appraise the company and "50% of this value is to be assigned to the 50% interest being valued." According to the Holleys, Crews and Leitch were attempting to ignore the "fair market valuation of Interests" language in Provision 2 and give it a meaning that did not exist.

Crews and Leitch filed a motion to clarify, or, in the alternative, to declare Rule 11 agreement null and void. On August 1, 2012, the trial court granted the Holleys' motion and ordered:

> Mr. Jeff Balcombe, the neutral appraiser, and/or his company, The BVA Group, LLC, is hereby retained by the parties so that he may be engaged to appraise the fair market value of Plaintiffs' 50% interest in DKASI Corporation in accordance with generally accepted valuation methods and in consideration of the factors outlined in the Uniform Standards of Professional Appraisal Practice Standards.

Balcombe provided his appraisal on October 10, 2012 with a fair market valuation of Crews and Leitch's fifty percent interest in DKASI at $620,000. After subtracting fifty percent of the cost of the appraisal and fifty percent of the TCAD value of the Keller land, the final buy out payment totaled $334,661.50. On December 11, 2012, the Holleys deposited a check in this amount with the trial court's registry.[1]

After delivering the funds to the trial court's registry, the Holleys filed a supplemental counterclaim in which they sought a declaration from the court that Crews and Leitch were no longer shareholders of DKASI, and therefore, should take nothing by their claims as shareholders of DKASI. The Holleys also requested attorney's fees.

In January of 2014, the parties filed cross-motions for summary judgment in which they again argued the enforceability of the Rule 11 agreement. The trial court granted the Holleys' motion, denied the cross-motion, and ordered that Crews and Leitch take nothing on their shareholder oppression claims. In the final judgment, the trial court awarded the Holleys $133,840.00 in attorney's fees. This appeal of the summary judgment and the award of attorney's fees followed.

**Enforceability of Rule 11 Agreement**

In their first issue, Crews and Leitch argue the parties never entered into an enforceable Rule 11 agreement because they did not agree on essential terms, and even if they did agree on the essential terms, the agreement was never signed. The Holleys respond the parties repeatedly acknowledged and confirmed the existence of such an agreement, terms of the agreement were sufficiently defined, and the electronic signature block of the emails met the signature requirement of Rule 11.

---

[1] Prior to the deposit, Crews and Leitch filed mandamus petitions in both this court and the Supreme Court of Texas after the trial court denied their motion seeking a continuance of the trial date. In their petition, they again argued the validity of the Rule 11 agreement. Although the Texas Supreme Court granted an emergency stay and requested briefing, the court ultimately denied relief.

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, indulge every reasonable inference, and resolve any doubts in the nonmovant's favor. *Id.* When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, as here, the reviewing court considers the summary judgment evidence presented by both sides, determines all questions presented, and if the reviewing court determines that the trial court erred, renders the judgment the trial court should have rendered. *Id.*

Rule 11 of the Texas Rules of Civil Procedure provides that "[u]nless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record . . . ." TEX. R. CIV. P. 11. The same rules governing construction of contracts apply in construing Rule 11 agreements. *Dallas Cnty. v. Rischon Dev. Corp.*, 242 S.W.3d 90, 93 (Tex. App.—Dallas 2007, pet. denied). The essential or material terms of a contract must be definite, certain, and clear, and, if they are not, the contract is unenforceable. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992).

The issue of whether a Rule 11 agreement fails for lack of an essential term is generally a question of law to be determined by the court. *Kanan v. Plantation Homeowner's Ass'n Inc.*, 407 S.W.3d 320, 330 (Tex. App.—Corpus Christi 2013, no pet.). Essential or material terms are those terms the parties "would reasonably regard as vitally important elements of their bargain." *Id.* (citing *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 531 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). Whether a term forms an essential element of a contract depends primarily upon the intent of the parties. *Domingo v. Mitchell*, 257 S.W.3d 34, 41 (Tex. App.—Amarillo 2008, pet. denied). As long as the parties agree to the essential terms of the contract,

the agreement may leave other non-essential provisions open for future agreement. *Kanan*, 407 S.W.3d at 330.

Crews and Leitch admit the parties agreed almost immediately on the appraisal and subsequent buy out based on the appraised value, but the parties never agreed on payment, financing, or preservation of claims, which were essential terms to the agreement. First, Crews and Leitch did not argue to the trial court that preservation of claims for litigation was an essential term of the agreement, nor have they provided argument on appeal supporting their claim. Therefore, we do not consider it in our analysis. *See* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); TEX. R. APP. P. 33.1. We do, however, consider whether payment and financing were essential terms of the agreement.

Although Crews and Leitch argue payment and financing were obviously central to the agreement and the Holleys' attorney established the terms materiality "when he rejected the notion of settlement without them," we do not agree with Crews and Leitch's characterization of the settlement negotiations. In the first letter proposing a buy-out procedure between the parties, the Holleys' attorney detailed six different terms and said the Holleys were unwilling to postpone an upcoming deposition "without and [sic]  agreement of some kind . . . ." Crews and Leitch's attorney responded that Crews and Leitch "agree to paragraphs 1 through 4 of your correspondence," and although they agreed "to the context of paragraph 5," they did "not agree to the specific terms offered, either in terms of amount of down payment, length of payment, and/or interest rate . . . ."

As negotiations regarding the context of paragraph 5 continued, the Holleys' attorney specifically stated, "The heart of my proposal is paragraphs 1-4, to which you have agreed." Although he also stated the parties could not execute on an agreement without reaching a

consensus on the mechanics of paragraph 5, the continued email exchanges, as discussed below, establish the parties did in fact reach an acceptable consensus.

After a few more email exchanges in which both parties suggested terms for interest rate, duration of loan, amount of down payment, and percentage of TCAD value for the Keller property, the Holleys' attorney finally required Crews and Leitch to "make a proposal that contains at least one of these terms: (a) an interest rate of 9% or less, (b) a down-payment of $400,000 or less, or (c) giving the Holleys 100% of the TCAD evaluation of their interest in the Keller property" or the Holleys would move forward with a scheduled deposition. Crews and Leitch agreed to (c).

This exchange between the parties establishes the "heart of the proposal" was agreed to by the parties, and Crews and Leitch made a proposal containing at least one of the terms to satisfy the "mechanics" of paragraph 5, as required by the Holleys. Through the proposal and acceptance of just one of these terms, the parties likewise indicated the other terms were not essential to the agreement or a vitally important ingredient of their bargain.[2] *See Domingo*, 257 S.W.3d at 41; *see also Ozlat v. Nguyen*, No. 01-97-00568-CV, 1998 WL 255142, at *2 (Tex. App.—Houston [1st Dist.] May 21, 1998, no pet.) (not designated for publication) (noting financing terms were not essential to the contract). Further, in the letter accepting Crews and Leitch's proposal (and filed with the trial court), the Holley's attorney said, "I hope we are able to resolve additional issues as effectively as we have resolved the buy-out issue." Accordingly, the parties' Rule 11 agreement does not fail for lack of an essential term.

In reaching this conclusion, we are unpersuaded by Crews and Leitch's reliance on an email arguing the parties had nothing more than "an agreement to agree." In one email, the Holleys' attorney referenced a need to mediate, if necessary and resume depositions as soon as

---

[2] Indeed, the eventual buy-out was paid in lump sum and no financing was involved.

practical "after fully exploring the buy-out option." This statement, however, was made before Crews and Leitch proposed giving the Holleys one hundred percent of the TCAD evaluation, which the Holleys accepted. Moreover, because the financing terms were not essential, the parties were free to leave other non-essential provisions open for future agreement. *See Kanan*, 407 S.W.3d at 330. Accordingly, we overrule Crews and Leitch's first issue.

Having concluded the agreement contains the essential and material terms to be enforceable, we need not consider the Holleys' argument that Crews and Leitch repeatedly acknowledged and confirmed the existence of a Rule 11 agreement, nor Crews' and Leitch's response that later conduct could not transform incomplete negotiations into an enforceable agreement. TEX. R. APP. P. 47.1.

We now turn to Crews and Leitch's third issue in which they argue the agreement was unenforceable because the computer-generated signature block in their attorney's email did not meet the signature requirement of Rule 11. *See* TEX. R. CIV. P. 11. The Holleys first argue Crews and Leitch failed to timely raise this argument to the trial court. Alternatively, they argue the Rule 11 signature requirement was met by the computer-generated signature block.

As a prerequisite to presenting a complaint for appellate review, the record must show the complaint was made to the trial court by a timely request, objection, or motion. TEX. R. APP. P. 33.1. The record shows that Crews and Leitch first raised this issue in the trial court in their summary judgment response filed on February 7, 2014. They argue this was enough to preserve their complaint for review. We do not agree.

A "timely" objection for purposes of rule 33.1 is one "interposed at a point in the proceedings which gives the trial court the opportunity to cure any alleged error." *See Driver v. Conley*, 320 S.W.3d 516, 518 n.3 (Tex. App.—Texarkana 2010, pet. denied). The record shows the Holleys first raised the enforceability of the agreement in the trial court in their motion to

enforce rule 11 agreement on July 19, 2012. Crews and Leitch did not raise the electronic signature argument in their response to the motion to enforce filed on July 26, 2012, or challenge the trial court's order signed on August 1, 2012 enforcing the Rule 11 agreement. They also failed to raise the issue in their motion for summary judgment filed on January 23, 2014. Not until over a year and a half later, did they raise the argument to the trial court.

Under these facts, we cannot conclude Crews and Leitch timely raised their complaint regarding the alleged lack of signature to the trial court as required by rule 33.1. *See* TEX. R. APP. P. 33.1. Accordingly, Crews and Leitch have failed to preserve their issue for review. We overrule their third issue.

Finally, Crews and Leitch argue in the alternative that if a Rule 11 agreement exists, it is ambiguous, and the trial court erred by not construing it against the Holleys. The Holleys respond the contract is not ambiguous.

When construing a written contract, the primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *D Design Holdings, L.P. v. MMP Corp.*, 339 S.W.3d 195, 201 (Tex. App.—Dallas 2011, no pet.). We give contract terms their plain and ordinary meaning unless the contract indicates the parties intended a different meaning. *Id.* We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Id.* When provisions of a contract appear to conflict, we will attempt to harmonize the provisions and assume the parties intended every provision to have the same effect. *Id.*

If contract language can be given a certain or definite meaning, then it is not ambiguous. *Id.* If we are unable to harmonize the provisions and give effect to all of the contract's clauses, the contract is susceptible to more than one reasonable interpretation and is ambiguous. *Id.*

Whether a contract is ambiguous is a question of law, which we review de novo. *Id.* Likewise, interpretation of an unambiguous contract is reviewed de novo. *Id.*

Here, Crews and Leitch argue the parties differ over the meaning of "fair market valuation" as it relates to "operating independently" in Provision 2 of the Rule 11 agreement, which provides as follows:

> 2. The designated consultants will, within 14 days of both of their designations, select a 3rd appraiser to evaluate the Plaintiffs' 50% interest in DKASI, assuming those three gyms were <u>operating independently</u> and *without considering the undeveloped land adjacent to the Keller facility* (hereafter referred to as "the Interests"). The consultants will be free to communicate with the 3rd appraiser regarding data, methodology and assumptions. The 3rd appraiser will provide a report with a fair market valuation of the Interests within 30 days of appointment.

Crews and Leitch argue the parties disagree over whether the appraisal of their fifty percent interest must include a discount for lack of control based on the "operating independently" language.

All parties agree the term "fair market value" has been defined as "the price at which the stock would change hands between a willing seller, under no compulsion to sell, and a willing buyer, under no compulsion to buy, with both parties having reasonable knowledge of relevant facts." *Ritchie v. Rupe*, 339 S.W.3d 275, 300 (Tex. App.—Dallas 2011), *rev'd on other grounds*, 443 S.W.3d 856 (Tex. 2014). However, Crews and Leitch contend a contractual term is not accorded its plain, ordinary meaning when the contract itself reveals that the term is used in a different sense. *Mid-Continent Cas. Co. v. Castagna*, 410 S.W.3d 445, 456 (Tex. App.—Dallas 2013, pet. denied). They contend the only way to "harmonize" and give effect to both the "operated independently" and "fair market valuation" language in Provision 2 is to conclude their fifty percent interest in DKASI should be valued using the general measure of fair market value, but as though no majority/minority management situation existed. Stated another way, the

–11–

three DKASI gyms should be evaluated as an independent company, and Crews and Leitch should get fifty percent of the value of DKASI.

The Holleys respond "operating independently" simply means the three DKASI gyms should be evaluated independently from the other ASI gyms, and fair market valuation does not take on a different meaning just because there was an underlying shareholder oppression suit. They argue the focus is not who the purchaser is, but rather the determination of fair market value as per the agreement.

Here, the plain language of Provision 2 specifically provides the third independent appraiser will provide a report with a fair market valuation of the Interests within thirty days of the appointment. We agree with the Holleys that by including the language "assuming those three gyms were operating independently . . .," the parties did not somehow modify or change the plain, ordinary meaning of fair market value. Crews and Leitch attempt to argue the phrase has no meaning unless it is construed to mean the three DKASI gyms must be evaluated as an independent company. To further this argument, they assert the Holleys' interpretation is meaningless because everyone agreed Crews and Leitch had no interest in the ASI gyms so there would be no reason to include language excluding those gyms from the value. Thus, Crews and Leitch contend this creates an ambiguity. We cannot agree. Including facts in a contract that all parties agree exist does not create an ambiguity. Rather, it helps clarify the meaning of the contract. Accordingly, the "operating independently" language neither creates an ambiguity nor alters the plain meaning of fair market value.

In further support of our conclusion, the record shows the trial court ordered the BVA Group to appraise the fair market value. The email from Erica Bramer, one of the designated "consultants," to Jeff Balcombe with the BVA Group informed Balcombe that "The standard of

–12–

value is fair market value. . . ."  In the final appraisal prepared by Balcombe, he stated the following:

> We were directed to use "fair market value" as the standard of value for this valuation analysis.  According to the American Society of Appraiser Business Valuation Standards Glossary, fair market value is defined as the price, expressed in terms of cash equivalents, at which property would change hands between a hypothetical willing and able buyer and a hypothetical willing and able seller, acting at arm's-length in an open and unrestricted market, when neither is under compulsion to buy or sell and when both have reasonable knowledge of the relevant facts.  In the context of this definition of fair market value, we recognize that the Subject Interest was a noncontrolling interest and was not freely marketable on a public exchange.

The evidence shows "fair market value" was given its plain and ordinary meaning by the parties involved, and nothing indicates the parties intended a different meaning or that lack of control should not be taken into account in valuing the interest of Crews and Leitch.  *D Design Holdings, L.P.*, 339 S.W.3d at 201.  Accordingly, the Rule 11 agreement is unambiguous as a matter of law.  We overrule Crews' and Leitch's fourth issue.

**Attorney's Fees**

In their final issue, Crews and Leitch contend the Holleys were not entitled to attorney's fees based on their request for declaratory relief; therefore, the trial court abused its discretion by awarding the Holleys $133,840.  The Holleys respond they properly requested declaratory relief, which the trial court granted, thereby entitling them to attorney's fees.

The Declaratory Judgment Act does not require an award of attorney's fees to the prevailing party, or to any party.  *Preston State Bank v. Willis*, 443 S.W.3d 428, 440 (Tex. App.—Dallas 2014, pet. denied).  Moreover, a party cannot use the Declaratory Judgment Act as a vehicle to obtain otherwise impermissible attorney's fees.  *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 670 (Tex. 2009) (noting that if a party could replead any claim as a declaratory judgment to justify a fee award, attorney's fees would be available to all

parties in all cases, which would frustrate the limits Chapter 38 imposes on fee recoveries). However, if the trial court awards such fees, the award must be reasonable, necessary, equitable, and just. *Id.* We review a trial court's award of fees for an abuse of discretion. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). It is an abuse of discretion to award attorney's fees under the Declaratory Judgment Act when the statute is relied upon solely as a vehicle to recover such fees. *City of Carrollton v. RIHR Inc.*, 308 S.W.3d 444, 454 (Tex. App.—Dallas 2010, pet. denied).

Here, after the trial court entered the order granting the Holleys' motion to enforce the Rule 11 agreement, Crews and Leitch filed their fourth and fifth amended petitions in which they continued to challenge the enforceability of the Rule 11 agreement, along with other claims. On December 5, 2012, the Holleys filed their supplemental answer and supplemental counterclaim. They raised standing and/or capacity as an affirmative defense. Specifically, they argued as follows:

> Plaintiffs and Defendants executed an agreement in which Defendants purchased Plaintiffs' interest in DKASI Corporation. As of December 5, 2012, Defendants have complied with that agreement in all respects and have delivered funds and otherwise performed pursuant to that agreement. As a result, Defendants have completed the purchase of Plaintiffs' interest in DKASI, and Plaintiffs no longer have standing to bring claims in their capacity as shareholders.

Their counterclaim for declaratory judgment then requested a declaration that "Plaintiffs are no longer shareholders in DKASI Corporation and are no longer entitled to any rights or benefits as shareholders."

The Holleys argue the trial court did not abuse its discretion by awarding attorney's fees because filing a counterclaim for declaratory relief was necessary after the Holleys fully performed their obligations under the Rule 11 agreement and Crews and Leitch continued to dispute the issue. Crews and Leitch respond declaratory judgment was not available to the

–14–

Holleys because the dispute was already pending before the trial court, and the Holleys' requested declaration was an affirmative defense that did not seek any additional relief. We agree with Crews and Leitch.

Artful pleading to present affirmative defenses in the form of a declaratory judgment counterclaim is not sufficient to state a claim for affirmative relief. *Pace Concerts, Ltd. v. Resendez*, 72 S.W.3d 700, 703 (Tex. App.—San Antonio 2002, pet. denied). Here, the Holleys' request for a declaration that Crews and Leitch were no longer shareholders was no more than a restatement of their defense that the Holleys had purchased Crews and Leitch's interest in DKASI, which meant Crews and Leitch no longer had standing to bring any claims as shareholders. Thus, the main thrust of the Holleys' counterclaim was whether Crews and Leitch were still shareholders, an issue that could be resolved within the context of the Holleys' affirmative defense. *See, e.g., id.* (party seeking declaration that a partnership agreement terminated on a certain date was no more than a restatement of defense that no agreement existed or that agreement terminated on a certain date and trial court could resolve issue through defenses raised rather than through declaration).

Under these facts, the Holleys used the Declaratory Judgment Act as a vehicle to obtain an otherwise impressible attorney's fee award. Accordingly, the trial court abused its discretion by awarding the fees. We sustain Crews and Leitch's fifth issue and reverse the trial court's award of $133,840 in attorney's fees. Having concluded the Holleys were not entitled to an attorney's fee award, we need not address the parties' arguments regarding whether the evidence is legally sufficient to support the award. TEX. R. APP. P. 47.1.

**Conclusion**

Having considered the parties' arguments, we reverse the attorney's fee award of $133,840 in favor of the Holleys.  In all other respects, the trial court's judgment is affirmed.

140544F.P05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

HAL CREWS AND DEBRA LEITCH,
Appellants

No. 05-14-00544-CV     V.

DKASI CORPORATION, DEBRA H.
HOLLEY, DAVID HOLLEY AND ASI
GYMNASTICS, INC., Appellees

On Appeal from the 14th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-11-15393.
Opinion delivered by Justice Bridges.
Justices Fillmore and Brown participating.

In accordance with this Court's opinion of this date, we **REVERSE** the attorney's fee award of $133,840 in favor of Debra H. Holley, David Holley, and ASI Gymnastics, Inc.

In all other respects, the judgment of the trial court is **AFFIRMED**.

Each party shall bear their own costs of appeal.

Judgment entered April 21, 2015.