**Dismiss and Opinion Filed March 8, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-01392-CV

## IN THE INTEREST OF A.B.P., A CHILD

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-50465-2017**

## MEMORANDUM OPINION

Before Chief Justice Burns and Justices Molberg and Smith[1]
Opinion by Justice Molberg

In this suit affecting parent-child relationships between K.J.P. (Father), A.B.C. (Mother), and their child (A.B.P.), Judge Douglas Skemp, sitting by assignment, rendered judgment after a bench trial. Later, without hearing any evidence, Judge Jill Willis signed a memorandum opinion, final order, and findings of fact and conclusions of law that differed from Judge Skemp's judgment. Because we conclude the final order, as well as the memorandum opinion and findings of fact and conclusions of law are void under these circumstances, we vacate those items,

---

[1] The Honorable John G. Browning, Justice, was a member of the original panel when the case was submitted, which occurred prior to the expiration of his term on December 31, 2020. Pursuant to applicable rules, Justice Craig Smith, as Justice Browning's successor, participated in this decision. *See* TEX. R. APP. P. 41.1; 47.2(a).

remand for further proceedings consistent with this memorandum opinion, and otherwise dismiss the appeal. *See* TEX. R. APP. P. 47.4.

## BACKGROUND

This suit began on January 26, 2017, when Mother filed an original petition seeking an order for conservatorship and possession of, access to, and support of A.B.P., who was three years old at the time. Father filed a counter-petition seeking similar rights for himself, and he amended his counter-petition on January 7, 2019. Mother filed a supplemental petition on that date as well.

Mother sought to be named sole managing conservator of A.B.P., or alternatively, a joint managing conservator, while Father asked that both parents be named joint managing conservators. Both sought the exclusive right to determine A.B.P.'s primary residence. Mother sought exclusive rights under family code sections 153.132(2) through (7),[2] while Father asked that both parents be allowed to make decisions regarding A.B.P.'s education, school, and psychiatric and psychological treatment. Both parents also sought various temporary orders, injunctions, support, and attorneys' fees. Mother also sought to restrict Father's possession of A.B.P., depending on Father's compliance with drug and alcohol testing and treatment.

---

[2] *See* TEX. FAM. CODE § 153.132(2)–(7).

–2–

A bench trial occurred on January 15, 2019, before Judge Skemp. A.B.P. was five years old at the time of trial. Eight witnesses testified, and roughly twenty-five exhibits were admitted.

Judge Skemp rendered judgment at the conclusion of the bench trial.[3] Among other rulings, Judge Skemp named Mother and Father joint managing conservators of A.B.P. He also ordered that Mother had the exclusive right to determine A.B.P.'s primary residence within Dallas County, Travis County, or the contiguous counties to those two counties.

Judge Skemp ordered Father to comply with various drug- or alcohol-related requirements, and he ordered three progressively broader phases of possession of and access to A.B.P. for Father that depended on Father's compliance with those requirements. Generally, Judge Skemp ordered that if Father complied over a total of fifteen months, he could progress from (1) supervised visitation with A.B.P. on certain Saturdays to (2) unsupervised visitation on certain weekends and to (3) unsupervised access under a standard possession order for parents living more than 100 miles apart.[4] Judge Skemp ruled that Father could progress from the first

---

[3] Judge Skemp's rendition of judgment takes up approximately twenty-five of the more than 500 pages of the reporter's record from the January 15, 2019 bench trial. In this memorandum opinion, we refer to some, but not all, of Judge Skemp's rulings in his rendition of judgment. Though we summarize and paraphrase some of those rulings for purposes of this memorandum opinion, the transcript of the bench trial captures the full scope and precise language of Judge Skemp's judgment.

[4] Additionally, Judge Skemp ruled that for the supervised visitation period (i.e. the first phase), the visitation would occur between 10 a.m. and 4 p.m. on the first and third Saturdays of each month. He also ruled that the first Saturday supervised visitation was to occur at Hannah's House in Richardson, Texas, while the third Saturday supervised visitation was to occur with a specific individual in Waco, Texas.

to the second phase with nine months of clean test results and from the second to third phase with six months of clean test results.[5]

Judge Skemp did not order Father to participate in any inpatient drug or alcohol treatment or detoxification program, but he did order Father to participate in intensive outpatient drug treatment through the Austin Drug and Alcohol Abuse Program with random drug testing at least once a month. He also ordered Father to attend sixty Alcoholics Anonymous (AA) or Narcotics Anonymous (NA) meetings over the next ninety days, and he ordered Father to participate in certain testing using Sober Link. Finally, he enjoined Father from alcohol or drug use and enjoined Mother from drug use.

Nineteen pages deep into his twenty-five page rendition of judgment, Judge Skemp stated, "Okay. Now tell me what I've forgotten." Both sides' counsel then asked him various questions, and he answered and clarified certain points.

After Father's counsel indicated she had no other questions, Judge Skemp asked, "Anything else?" Mother's counsel answered, "I don't think so, Judge." He then instructed both sides' counsel to prepare an order for the court's signature.

Time passed without a signed order. In March 2019, Mother filed a motion to sign an order. Father filed a letter regarding the order Mother proposed,

---

[5] After explaining to Father how the Sober Link system functions, Judge Skemp stated, "[Y]our drug tests shall be defined as a drug and alcohol test with the level of drugs and alcohol of 0 pg/mg or 0 pg/ml. I'm sure that means zero tolerance." Later, Judge Skemp stated that a clean test result would be required before supervised access could begin and stated a "clean UA" needed to be done "in the next 72 hours."

suggesting revisions and stating that his proposed revisions correlated with the transcript from the bench trial. Judge Willis heard Mother's motion in April 2019, and both sides' counsel argued but presented no evidence. On May 2, 2019, Judge Willis entered a memorandum opinion that differed from Judge Skemp's judgment.

Later that month, Mother filed a second motion to sign an order. After another non-evidentiary hearing, Judge Willis entered a final order on August 15, 2019. Like her memorandum opinion, the final order differed from Judge Skemp's judgment.

After Judge Willis entered the final order, Father requested that the court enter findings of fact and conclusions of law, and he later filed a notice of past due findings and conclusions. Without hearing evidence, Judge Willis entered findings of fact and conclusions of law in October 2019. These findings and conclusions also differed from Judge Skemp's judgment.[6]

The parties do not dispute that differences exist between Judge Skemp's judgment and Judge Willis's memorandum opinion, final order, and findings of fact and conclusions of law. Also, there appears to be no dispute that the differences are significant, as they include matters stating where A.B.P. may reside, matters concerning Father's possession of and access to A.B.P., and Father's required drug- and alcohol-related testing and treatment.

---

[6] Many of the differences between Judge Skemp's judgment and Judge Willis's findings of fact and conclusions of law exist due to Judge Willis's reference in her findings and conclusions to Father's entitlement to supervised or unsupervised periods of possession of or to access to A.B.P. "under the terms and conditions set forth in the [final] order."

We do not detail all of the differences here but include five examples to illustrate their significance. First, while Judge Skemp ordered that Mother had the exclusive right to determine A.B.P.'s primary residence "within Dallas or Travis County or contiguous counties to those two counties," Judge Willis's later filings give Mother the exclusive right to determine A.B.P.'s primary residence "within Travis County, Round Rock, Texas, Dallas County, Texas, or counties contiguous to Dallas County, Texas or any county located between Dallas County, Texas and Round Rock, Texas."

Second, while Judge Skemp did not order Father to participate in any inpatient drug or alcohol treatment or detoxification program, Judge Willis's later rulings order Father to do so or refer to such a requirement.

Third, while Judge Skemp ordered Father to participate in sixty AA or NA meetings in ninety days, Judge Willis ordered Father to participate in ninety such meetings over the same period. Fourth, while Judge Skemp enjoined Father from alcohol or drug use, Judge Willis only enjoined Father from drug use.

Fifth, Judge Willis changed the phased visitation schedule.[7] As one example, under Judge Skemp's judgment, Father could progress from the first to second phase after nine months of clean test results, but Judge Willis ordered twelve months

---

[7] Although we do not discuss all of the differences in Father's phased visitation schedule when comparing Judge Skemp's judgment and Judge Willis's memorandum opinion, final order, or findings of fact and conclusions of law, we note that, in addition to the example included above, for Father's supervised access period (i.e. the first phase), Judge Willis increased the time period by two hours and removed any geographic restrictions on where the supervised visitation was to occur.

instead of nine. Both judges required six months of clean test results for progression from the second to the third phase, but the differences in requirements for progression from the first to second phase effectively lengthened by three months the total number of months of clean test results Father needed before he could reach phase three, considering that Judge Skemp's judgment required fifteen months, while Judge Willis's memorandum opinion, final order, and findings of fact and conclusions of law required eighteen.

## ISSUES AND ANALYSIS

Father timely appealed and raises three issues. In his first issue, Father argues Judge Skemp rendered judgment on January 15, 2019. In his second and third issues, Father argues that Judge Willis committed judicial error in issuing her memorandum opinion, final order, and findings of fact and conclusions of law under the circumstances, and he asks that we vacate and reform the final order to be consistent with Judge Skemp's judgment. Mother, on the other hand, asks us to affirm, arguing that Father failed to preserve error on these issues and that Judge Willis acted within her authority.

### *Rendition of Judgment*

Father's first issue is undisputed, as both parties agree that Judge Skemp rendered judgment on January 15, 2019. We agree as well.

"A judgment routinely goes through three stages: (1) rendition; (2) reduction to writing; and (3) entry." *In re Marriage of Wilburn*, 18 S.W.3d 837, 840 (Tex.

App.—Texarkana 2000, pet. denied) (citing *Oak Creek Homes, Inc. v. Jones*, 758 S.W.2d 288, 290 (Tex. App.—Waco 1988, no writ)); *see Vann v. Brown*, 244 S.W.3d 612, 615 (Tex. App.—Dallas 2008, no pet.) (citing both *Wilburn* and *Oak Creek Homes* and describing stages as rendition, reduction to writing, and signing).

Rendition of judgment is "the act by which the court declares the decision of the law upon the matters at issue." *Stallworth v. Stallworth*, 201 S.W.3d 338, 348 (Tex. App.—Dallas 2006, no pet.) (citations omitted); *see W.C. Banks, Inc. v. Team, Inc.*, 783 S.W.2d 783, 785 (Tex. App.—Houston [1st Dist.] 1990, no writ) (citations omitted). A judgment is rendered when the decision is officially announced, either orally in open court or by written memorandum filed with the clerk. *Stallworth*, 201 S.W.3d at 348–49 (citations omitted); *W.C. Banks*, 783 S.W.2d at 785 (citations omitted). The rules of civil procedure do not authorize a judge to render a decision following a hearing unless she personally heard the evidence on which the order or judgment is based. *Masa Custom Homes, LLC v. Shahin*, 547 S.W.3d 332, 336 (Tex. App.—Dallas 2018, no pet.) (listing cases and noting that all courts that have considered the issue have so held); *W.C. Banks*, 783 S.W.2d at 785.

We agree Judge Skemp rendered judgment in this case on January 15, 2019.

*Whether Judge Willis Exceeded Her Authority*

In his second and third issues, Father argues that Judge Willis committed judicial error under the circumstances by issuing her memorandum opinion, final order, and findings of fact and conclusions of law. He asks that we reform the final

–8–

order to be consistent with Judge Skemp's judgment. Mother, in contrast, asks us to affirm, arguing that Father did not preserve error on his second and third issues and that Judge Willis acted within her authority.

## A. Father's Preservation of Error

Before discussing Judge Willis's authority under the circumstances, we consider Mother's argument that Father failed to preserve error. Specifically, Mother argues that Father did not preserve error on his second and third issues because he failed to (1) submit a proposed order in response to Mother's motions to sign, (2) request that either motion be heard by Judge Skemp, or (3) object to Judge Willis hearing either motion. Mother cites rule 33.1 in support of her position. *See* TEX. R. APP. P. 33.1.

Father disputes Mother's arguments. As to Mother's first argument, Father notes that his April 21, 2019 letter to the trial court contained Father's suggested revisions to the proposed order that Mother submitted to the trial court.[8]

As to Mother's second and third arguments, Father cites *Ad Villarai, LLC v. Pak*, 519 S.W.3d 132 (Tex. 2017), in arguing that he was not required to preserve error under the circumstances. In *Pak*, when considering error preservation in connection with void findings of fact and conclusions of law, the court stated that Pak "was under no obligation to object to the trial court's void actions." *See id.* at

---

[8] According to the clerk's file stamp, the letter was filed April 22, 2019, two days before the court's hearing on Mother's first motion to sign order.

137. If Judge Willis's memorandum opinion, final order, and findings of fact and conclusions of law were void—and, as we conclude below, they were—Father was under no obligation to object to Judge Willis's void actions because "[v]oid orders are not waivable on direct review." *Id.* (citing *Easterline v. Bean*, 49 S.W.2d 427, 429 (Tex. 1932)).

Further, even if we assume Father was required to preserve error, the record reflects that he did so. Generally, an objection must be made "timely" in the trial court to preserve a complaint for appellate review. TEX. R. APP. P. 33.1(a)(1). A "timely" objection is "one 'interposed at a point in the proceedings which gives the trial court the opportunity to cure any alleged error.'" *Crews v. Dkasi Corp.*, 469 S.W.3d 194, 201 (Tex. App.—Dallas 2015, pet. denied) (quoting *Driver v. Conley*, 320 S.W.3d 516, 518 n.3 (Tex. App.—Texarkana 2010, pet. denied)). The purpose of rule 33.1(a) is "to ensure that the trial court has had the opportunity to rule on matters for which parties later seek appellate review." *Odom v. Clark*, 215 S.W.3d 571, 574 (Tex. App.—Tyler 2007, pet. denied).

In this case, the trial court had the opportunity to rule on and to correct the error Father alleges here. In the April 2019 hearing, both sides argued their positions on the proposed order Mother submitted to the court with her first motion to sign, and in connection with that hearing, Father's counsel submitted a letter to the court with requested revisions that Father's counsel argued were consistent with Judge Skemp's judgment. After that hearing, Judge Willis entered her memorandum

–10–

opinion which differed from Judge Skemp's judgment, and Mother then filed a second motion to sign with a new proposed order that was consistent with Judge Willis's memorandum opinion. The court heard that motion in May 2019, and in that hearing, Father's counsel objected to the new proposed final order Mother submitted on the grounds that differences existed between Judge Skemp's judgment and Mother's most recent proposed final order, which Judge Willis signed at the conclusion of the hearing.

The May 2019 hearing transcript reflects not only that Mother's counsel was aware of Father's objection to the memorandum opinion and new proposed final order, but that Mother's counsel responded to Father's objection, acknowledged that differences existed, and argued that, despite those differences, Judge Willis had the power to sign the memorandum opinion and the proposed final order.

The parties' central dispute in this appeal is whether Judge Willis had the power to issue the memorandum opinion and final order she issued. The same issue arose in the May 2019 hearing, when the parties' counsel had a lengthy exchange on Judge Willis's authority because of Judge Skemp's earlier judgment and its differences from the proposed final order being discussed in the hearing. During that exchange, Mother's counsel acknowledged that Judge Willis's memorandum

opinion served as the basis for the proposed final order at issue and acknowledged that it "differ[ed] greatly" from Judge Skemp's judgment.[9]

Thus, before Judge Willis signed the final order, Father's counsel argued that Judge Skemp had rendered judgment, and it was undisputed that significant differences existed between his judgment and Judge Willis's memorandum opinion and the proposed final order. For some differences, such with the permitted location for A.B.P.'s primary residence, Father's counsel argued that Judge Willis should order a scope consistent with Judge Skemp's ruling. Even if we assume Father was required to preserve error, we believe Father satisfied the requirements of rule 33.1 by giving Judge Willis the opportunity to correct her error. *See* TEX. R. CIV. P. 33.1(a)(1); *Crews*, 469 S.W.3d at 201.

## B.   *Judge Willis's Authority and Void Actions*

Father argues Judge Willis committed judicial error and thereby abused her discretion in issuing her memorandum opinion, final order, and findings of fact and conclusions of law under the circumstances. Mother disputes this and argues we should affirm the final order because, she asserts, Judge Willis had the inherent

---

[9] Earlier in the hearing, Mother's counsel told Judge Willis that her latest proposed final order "differs greatly" from the order originally proposed "because your memorandum ruling changed those rulings." She also told Judge Willis, "[Y]our memorandum ruling differs greatly from the original ruling." Finally, Mother's counsel told Judge Willis, "[Y]ou have plenary power. You're the district court – judge of this court. If you want to change the rulings of the visiting judge, you have the right to do that. And I drafted the order based solely on your memorandum ruling that's in front of you."

–12–

authority to make substantive legal decisions and to review, vacate, amend, modify, or reform any judgment rendered in her court.

Entry of a written judgment is a ministerial act reflecting the court's action. *Stallworth*, 201 S.W.3d at 349 (citations omitted). If the written order does not comport with the judgment rendered, the parties are entitled to have the order reformed to accurately reflect the action taken by the trial court. *Id.* (citing TEX. R. CIV. P. 329b(g)). Until thirty days after the judgment is signed, the trial court has plenary power to vacate, modify, correct, or reform its judgment at any time before it becomes final. *Id.* (citing TEX. R. CIV. P. 329b(d); *Mesa Agro v. R.C. Dove & Sons*, 584 S.W.2d 506, 508 (Tex. App.—El Paso 1979, writ ref'd n.r.e.)). During this period, the trial court's power to modify its judgment is virtually absolute. *Id.* (citing *Garza v. Serrato*, 671 S.W.2d 713, 714 (Tex. App.—San Antonio 1984, no writ)).

However, a judge who did not preside over a bench trial may sign a final written judgment in a case so long as the written judgment merely memorializes an earlier final judgment rendered by the judge who heard the evidence. *Masa Custom Homes*, 547 S.W.3d at 336 (citations omitted). Here, it is undisputed that Judge Willis's memorandum opinion, final order, and findings of fact and conclusions of law significantly differed from, and do not merely memorialize, the final judgment rendered by Judge Skemp, who heard the evidence. Judge Willis thus acted outside her authority under the circumstances.

When a judge has no authority to render an order or judgment, that order or judgment is void. *Id*. at 338. We have no jurisdiction to consider the merits of an appeal from a void order or judgment. *Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 623 (Tex. 2012). Instead, we have jurisdiction only to determine the validity of the order or judgment underlying the appeal and to make appropriate orders based on that determination. *Id*. at 624. We must also consider our jurisdiction sua sponte. *Id*.

When a party appeals a void order, we should declare the order void and dismiss the appeal for want of jurisdiction. *In the Estate of Knies*, No. 05-18-00919-CV, 2018 WL 5603569, *1 (Tex. App.—Dallas Oct. 30, 2018, no pet.) (mem. op.) (citing, in part, *State ex rel. Latty v. Owens*, 907 S.W.2d 484, 486 (Tex. 1995)) (other citations omitted).

In countering Father's arguments, Mother argues that Judge Willis acted within her inherent authority. Mother primarily relies on two cases as support for her argument. *See Stallworth*, 201 S.W.3d 338 at 348; *Becknell v. D'Angelo*, 506 S.W.2d 688, 692 (Tex. App.—Fort Worth 1974, no writ). Both cases are distinguishable from the facts here. In *Stallworth*, there is no indication in the opinion that two different judges were involved in the rendition of judgment and later filings. *See id*. at 343, 348. In this case, however, Judge Skemp heard all of the evidence and rendered judgment in the bench trial, while Judge Willis later

–14–

issued a memorandum opinion, final order, and findings of fact and conclusions of law that differed from Judge Skemp's judgment, without hearing any evidence.

*Becknell* is also distinguishable. In that case, three different judgments were rendered over the course of three years by two different judges. *Becknell*, 506 S.W.2d at 690–92. Prior to the second judgment, the appellant moved to amend, set aside, or modify the first one, *see id*., at 690, and prior to the third judgment, appellee filed a bill of review. *See id*. at 691. Here, neither party sought any such relief.

Moreover, neither *Stallworth* nor *Becknell* address the primary issue we decide here: whether Judge Willis fulfilled her ministerial duty of entering Judge Skemp's judgment, when she heard no evidence, no motion to amend, set aside, or modify that judgment, and heard no bill of review. Based on this record and the authorities discussed herein, we conclude Judge Willis had a ministerial duty to enter Judge Skemp's judgment. *See Stallworth*, 201 S.W.3d at 349 (entry of a written judgment is a ministerial act reflecting the court's action). Because Judge Willis failed to fulfill that duty, her memorandum opinion, final order, and findings of fact and conclusions of law are void and leave us without jurisdiction to decide the merits of the appeal. *See Coronado*, 372 S.W.3d at 623–24 ("appellate courts do not have jurisdiction to address the merits of appeals from void orders or judgments"); *In the Estate of Knies*, 2018 WL 5603569, at *1 ("When a party appeals a void order, we should declare the order void and dismiss the appeal for want of jurisdiction.")

## CONCLUSION

Because Judge Willis's memorandum opinion, final order, and findings of fact and conclusions of law are void under the circumstances, we vacate her memorandum opinion, final order, and findings of fact and conclusions of law, remand the case for further proceedings consistent with this opinion, and otherwise dismiss the appeal.

191392f.p05

/Ken Molberg/

KEN MOLBERG
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF A.B.P., A CHILD

No. 05-19-01392-CV

On Appeal from the 429th Judicial District Court, Collin County, Texas
Trial Court Cause No. 429-50465-2017.
Opinion delivered by Justice Molberg. Chief Justice Burns and Justice Smith participating.

In accordance with this Court's opinion of this date, we **VACATE** the trial court's memorandum opinion, final order, and findings of fact and conclusions of law, **REMAND** the case for further proceedings consistent with this opinion, and otherwise **DISMISS** the appeal.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 8th day of March, 2021.